IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA,)
Plaintiff, )
)
v. ) CASE NUMBER: ABA-25-0352
)
DAVID TURNER, )
Defendant. )
_________________________)

TRANSCRIPT OF PROCEEDINGS - STATUS CONFERENCE
BEFORE THE HONORABLE ADAM B. ABELSON
UNITED STATES DISTRICT JUDGE
Friday, March 27, 2026
Baltimore, Maryland - Courtroom 7D

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

BY: KIM HAGAN, ESQUIRE
JAMES O'DONOHUE, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201

PRO SE DEFENDANT:

BY: DAVID TURNER

Also Present:

Standby Counsel:
Andrew Szekely, Esquire
Sedira Banan, Esquire
Office of the Federal Public Defender

Jeff Belcher, FBI

***Proceedings Recorded by Mechanical Stenography***
Transcript Produced by Computer-Aided Transcription

**P R O C E E D I N G S**

**(10:08 a.m.)**

**MS. HAGAN:** Good morning, Your Honor. Calling United States of America v. David Turner. This is 25-0352. Kim Hagan, Jamie O'Donohue, and Special Agent Jeffrey Belcher with the FBI on behalf of the Government.

**THE COURT:** Good morning.

**MS. HAGAN:** Good morning.

**THE COURT:** Good morning, Mr. Turner. Would you like to introduce yourself for the record, Mr. Turner?

**THE DEFENDANT:** David Turner, defendant, pro se.

**THE COURT:** All right. And standby counsel.

**MR. SZEKELY:** Good morning, Your Honor. Andrew Szekely and Sedira Banan here as standby counsel.

**THE COURT:** Good morning.

All right, there are a couple of items on the agenda for today. The one is that Mr. Turner has filed an appeal of the earlier detention order by Judge Coulson and Mr. Turner is entitled to an appeal of that determination to me so we'll be addressing that shortly.

In the context of a detention order that is appealed from a magistrate judge to a district judge a defendant is not necessarily, just as the Government is not necessarily entitled to a full-blown hearing. I have, and we'll get to this, reviewed the full record of that hearing and the

additional filing, but we will address that in a bit.

There is a question about discovery and I know there was a filing from the Government and concerns expressed by Mr. Turner. We will be addressing that as well.

I have a couple of other preliminary points before we get to the detention appeal. But before I share those preliminary points, Ms. Hagan, at the last conference you had said there was going to be a meeting of the Capital Case Unit in DC. Are you in a position to provide any update?

**MS. HAGAN:** There was a meeting of the Capital Case Committee, Your Honor. As of Monday we were advised that the committee is in the process of drafting its memorandum with its recommendation that will be forwarded to the Attorney General.

**THE COURT:** So no determination has been made at this time?

**MS. HAGAN:** Correct.

**THE COURT:** That you're aware of.

**MS. HAGAN:** Yes.

**THE COURT:** Okay.

So before I turn to the detention appeal, in considering where we are in a number of the motions that have been filed, I want to put a couple of points on the record to make sure that the following points are clear, particularly in light of Mr. Turner continuing to take the position that he is waiving

his right to the Sixth Amendment right of counsel and instead to invoke his right of self-representation, I've alluded to this, Mr. Turner, but I want to make sure the following points are clear:

First, waiver of the right to counsel and insistence on self-representation in a criminal case is permitted only if as the Supreme Court has put it in *Indiana v. Edwards* from 2008 which is one of the principal cases in that area, the citation of that case is 54 U.S. 164. The Supreme Court explains that one way that a criminal defendant can lose the right to represent themselves is if the person, quote, "suffers from a severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." We've talked about that before. I don't expect to address that in depth today, but that is one way that a person can lose the right to self representation.

That also means although a determination earlier in this case was made by Judge Coulson, that that standard was satisfied, I have an independent obligation to determine as an ongoing matter whether that standard has been satisfied.

The second -- and this I've referred to but I want to make sure the following is clear as well: There's another way that a defendant in a criminal case can lose the right to represent themselves.

In *Faretta v. California* which, Mr. Turner, I know you're

familiar with, that's the Supreme Court case that addresses the right of self-representation, the Supreme Court explained in footnote 46 the following: We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. The right of self-representation has been recognized from our beginnings by federal law and by most of the states and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course a state or the Federal Government may even over objection by the accused, appoint standby counsel to aid the accused if and when the accused requests help and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. That's from *Faretta*.

The Fourth Circuit has explained in *United States v. Frazier-El*, 204 F.3d 553 Fourth Circuit 2000, that, quote, "The right of self representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." In addition, it is not meant to, quote, "be used as a tactic for delay for distortion of the system, or for manipulation of the trial process."

In that same case the Fourth Circuit explained that the *Faretta* right to self-representation is not absolute and the

Government's interest in ensuring the integrity and efficiency of the trial at all times outweighs the defendant's -- let me restate that. The Government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.

In another Fourth Circuit case from 2015, *United States v. Ductan*, D-U-C-T-A-N, in a concurring opinion by now Chief Judge Diaz, Judge Diaz explained that, quote, "a pro se defendant who is disruptive in the courtroom may forfeit his right to self-representation. In these cases the proper course of action is to revoke the defendant's right to self-representation and appoint counsel."

I'm not going to do that today, but I want to make very clear on the record that that is the standard. I'm not done, Mr. Turner. The Fourth Circuit has also upheld the District Court's decision to revoke a defendant's pro se status where they, quote, "engaged in," quote, "disruptive conduct and obstructionist behavior that rendered it impossible for the District Court to conduct the trial without appointing defense counsel." That case is *United States v. Glover*, 715 F.App'x 253, Fourth Circuit 2017.

And finally, I will note another Supreme Court case, *McKaskle* M-c-K-A-S-K-L-E *v. Wiggins*, 465 U.S. 168 from 1984 explained that in *Faretta*, the Court held that an accused has a Sixth Amendment right to conduct his own defense provided

only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol.

With those comments on the record to begin, I will turn to the detention appeal. Was there a specific point, Mr. Turner, you wanted to raise before I hear your appeal?

**THE DEFENDANT:** Yes. In reply, I do understand that the court needs to operate, right, and be able to prosecute without being interrupted. Some of my actions, right, could be misinterpreted as a disruption, but I would like to let you know and the court know I have the utmost respect for the Court and what we are here to do. I understand the severity of what we're here for, right, what I'm accused of and that the trial needs to proceed. I'm not trying to disrupt the trial at all. I am simply -- and I will state, this is for the record, anything I say you can go back, is simply to assert and make sure that my rights are protected.

And I'll say from day one the Court, and the prosecution, and the defense had been taking illegal action to suppress my rights. And I have a docket here in my hand, right, that is dated for 11/12 that says I am represented by Andrew Szekely, Paul D. Hazlehurst, Sedira Banan. I never consented to these folks representing me, right?

And then when you look at the docket, if you look at line 10, you see or -- not line 10, but if you look at line 13 you

see Paul D. Hazlehurst is appointed as my attorney. And then if you look at line 17, Paul D. Hazlehurst has a rescind record, right, saying that it was entered prematurely. And I would like to state I never met with these folks, nor consented to them representing me before this was done, right? So that's not lawful.

**THE COURT:** I understand your position.

**THE DEFENDANT:** Can I please finish? I listened to you. I want it on the record what I'm saying.

**THE COURT:** You understand that I understand that you are representing yourself.

**THE DEFENDANT:** Yes.

**THE COURT:** At this moment in this case.

**THE DEFENDANT:** And this is where we're talking about disruption, right, because everyone wants to paint a picture that is not necessarily valid or true, right? And when I'm trying to speak the truth and assert and protect my rights which is what this court is here for, right, then I'm cut off and spoken over. And in turn for me being cut off and spoken over, those instances are framed as me disrupting the court when, in fact, it's my turn to speak. I just listened to you and it's my turn to speak. I was cut off.

So I would like to say that these folks, the Court allowed them to file an appearance. I never met with them nor consented to them being my attorneys, right? And that same

person, the same day that I was here for my initial appearance he threatened my life when I told him I would not let him represent me. The third time he asked -- I said no the first time. The third time he asked he said, you know we're the ones who recommend whether you get the death penalty or not. Is it relevant to me, I said no. We're not going to talk again after this. And I didn't realize until a few days ago while he was so adamant about representing me, because he had already entered his appearance without my consent.

And then when we go back to the December 17th hearing where Sedira Banan told me not to mention the motion that was never sent to me by the attorneys which is illegal, right, I didn't realize why you all were so upset and cutting me off and wouldn't let me speak during that time until I looked very thoroughly at this docket and I see on the docket, there's two lines for this motion. This motion was entered on 11/17 and sir, you did not wait 14 days to grant that motion. You granted that motion in less than 24 hours later on the 18th. And on December 17th the prosecution sat here and she told you that she sent me that motion in the packet that didn't make it to the mail until the 18th, the day that you granted it.

So you and her both knew that I never saw that motion. And I think the most important point is that motion was not in that packet. I had never seen the motion. And the Court never sent me the order granting that motion.

So we have corruption, collusion, law breaking between the prosecution and the Court, right? Because you did not call her out as being untruthful and nobody brought up that that motion was granted a day after it was submitted. So she's covering for you, you're covering for her and you won't let me speak. I did not -- I'll say to the Court, I respect the court. I understand that sometimes employees of the court do not do what they are supposed to do. But in the instance that misconduct takes place, right, I have to assert my rights. That's the only thing I'm doing is telling the Court that hey, the law is being broken against me by an employee of the court. That's why I asked, right, for a reassignment from you, from this hearing, right, because that is illegal. And the fact that you let her commit perjury and say she sent me something after it was granted and nobody called her out, right, that just shows partiality that you are not here to protect justice; you are in collusion with the prosecution.

And I'll say two weeks ago I was here on Friday the 13th for an ex parte psych evaluation that I knew nothing about, right? And I have a contract here that the mailroom from CDF signed. And I didn't get a notice of the order for that ex parte hearing.

**THE COURT:** So first of all, I'll let you continue, Mr. Turner.

**THE DEFENDANT:** Can I just finish and then can you

just wait until I'm finished?

**THE COURT:** I want to make sure the record is clear. You referred to ex parte. I'm aware that a request by standby counsel to use the space in the courtroom was requested. That was not a hearing. The Court was not involved. I was not present, to make sure that the record is very clear that when you say "ex parte" you're not referring to any interaction with me.

**THE DEFENDANT:** Okay. In response to that, right, I told you, I told you multiple times that I sent an email and told these folks multiple times that I did not want them participating in my defense in any way. I'm fine, right?

**THE COURT:** Understood. Okay, let's --

**THE DEFENDANT:** Wait, wait. I'm not finished, right? You say I cut you off.

**THE COURT:** One more main --

**THE DEFENDANT:** I have not cut you off at all today.

**THE COURT:** Everything you said so far is already on the record multiple times that we've addressed. Why don't you finish up this thought and then we're here principally to hear your appeal of the detention order and I'm happy to hear you on that.

**THE DEFENDANT:** All right, so can I finish? So I told these folks many times I do not want them participating in my defense. I have an email here from months ago that was

sent to them telling them not to file anything on my behalf, do anything on my behalf and not to share my discovery with anyone, right, because I realize that one, the prosecution is breaking the law. The Court is allowing it and you have these people on my defense breaking the law against me because at the time when Paul D. Hazlehurst was appointed my attorney without my consent, right, he allowed her to send that in and allowed that motion to be granted without me ever seeing it or him ever seeing it. He couldn't have seen it, it was a day. He didn't file a motion to vacate, anything.

So this man was placed on my defense to essentially let you do whatever you want to do which is break the law against me, right?

So when I'm speaking to the Court, the things that I am talking about is the misconduct. I'm noting the misconduct. Which when I do note the misconduct I am cut off and then that is framed as me trying to disrupt the Court. No, that is me asserting my rights and informing the Court that the law is being broken and the folks who are in the room who are breaking the law I am trying to remove them so I can have a fair trial and hearing. I don't want the trial to be disrupted by corruption, especially in a proceeding that is this serious, right?

So that lets you know that I understand the seriousness of the matter. I understand the law, I understand that it's

being broken, right? And when I note that it's being broken I am cut off and there's frustration. And then there's illegal action taken against me to try to have, right, I'm brought through a pitch-black hallway to an empty courtroom for a proceeding I know nothing about called for by folks who are not my defense counsel who I've already told the Court I don't want them doing anything on my behalf. But you granted that. You can't grant any of my motions, right? My motions have to sit and wait for months, many of them, over a dozen of them that you won't rule on but you rule on a motion from folks who are not representing me, who I told you I don't want to have any part of my defense, right? And then I'm brought here in coordination with the U.S. marshals to a pitch black hallway into this empty room where I think I'm having a hearing, right, and I'm meeting with a person, I think his name is Corvin, whatever, and I have him sign a contract that says he was here on the request of the defense counsel to have -- to give me an evaluation based on their concerns.

These are folks who I haven't spoken to in three months. How could they all of a sudden have a concern about my mental health? We don't speak. Don't you find that baffling? I haven't spoken to these folks so how could they have a concern about my mental health? We don't talk. They don't know anything about my defense, my plan, anything.

**THE COURT:** Okay, so --

**THE DEFENDANT:** I'm not finished. I'm trying to finish. I'm going to get there, right? But the point is no one has cut you off. You look back at the --

**THE COURT:** The record speaks for itself.

**THE DEFENDANT:** Yeah, the record -- the only time you have a problem is when I'm speaking and I'm being cut off. I listen to everyone speak and I don't cut anyone off unless I object, which is valid. I'm allowed to do that. Because I'm pointing out that someone is, one, saying something that shouldn't be allowed to be said in court, right? And even in those cases my objections are interrupted and interpreted as a disruption of the court when I'm doing something that's lawful.

So I'm going to note that you, prosecution and defense have broken the law against me. The defense entered -- standby counsel entered their appearance without my consent and they allowed them to break the law against me. They allowed you to grant a motion within 24 hours which you have to wait 14 days and you can't grant any of my motions. All three sides are corrupted and colluding.

**THE COURT:** Is there anything that you'd like me to consider with regard to the detention issue beyond what is in your written file?

**THE DEFENDANT:** Well, I haven't moved on to the detention issue.

**THE COURT:** I'm ready for you to move on.

**THE DEFENDANT:** I understand you're ready, sir, but I'm not finished. Can you stop disrupting me?

**THE COURT:** I'm directing you to move on to the detention issue now.

**THE DEFENDANT:** All right.

**THE COURT:** Anything that you'd like me to consider on that issue?

**THE DEFENDANT:** In the initial detention hearing, that's the only thing that I had, what she presented was just false. She showed --one, she showed -- okay, so there's no rules of evidence in the detention hearing but there still is the rule of law, right? And she showed pictures of items that were part of an illegally -- an illegally executed and I guess doctored, what do you call, search and seizure. The rules of evidence don't say anything about the search and seizure. That's a violation of the Fourth Amendment. And I've already filed extensive documentation that is signed by the prosecution that notes that yes, that was illegally executed.

So one, what she showed was false; and then two, it's from an illegally executed search which is a violation of the Fourth Amendment. So that should not be allowed to be spoken about in the hearing.

And two, to try to place me in the vicinity of what took place, she shows a picture of the car stating that it's my car

but I've looked at that picture for a while and that car does not match the description of my car. My car has -- my car had, I don't know if it has anymore, it has a roof rack on it. That car does not have a roof rack on it. So it may look similar, but it's not. It's a picture that she chose to show that looks similar to my car, two. And three, for her to note and say that I'm a danger to society, I have no criminal record.

**THE COURT:** Mr. Turner, let me just ask this: I have reviewed the Government's filing which I'm sure you have as well. The pictures that are in that filing, ECF 105 do all appear to contain a roof rack. Which depiction --

**THE DEFENDANT:** No, I looked at that car. There's no roof rack on that car. I looked at that car. And I have it here. I can show it to you if you want to look at it. It does not have a roof rack on it. It's a car that looks similar to the car that I have. It does not match the description of my car at all.

**THE COURT:** Which picture are you referring to?

**THE DEFENDANT:** There's only one picture. It's a car in a dark setting and it's from very far away. It's like an inch by inch photo. There's only one photo. If you look at the top, if you look at the warrant for my car there's a very thick roof rack, thick black roof rack at the top of my car. If you look at my car there's nothing on the top of that

car.

**THE COURT:** Okay.

**THE DEFENDANT:** So she showed a picture that it looks -- from far away, yes. It looks similar to my car. But it does not match the description of my car, right? And other than that, you know, proving that I'm a flight risk or a danger to the community: 1) my children were kidnapped on August 25th. It's well documented by the prosecution -- by the prosecutorial team. I didn't harm anybody. I didn't threaten anybody. I went to the courts and I filed the proper paperwork to seek to have my children lawfully returned.

And second, I don't have any violent criminal history.

Third, if she references the charges brought against me, actually I'm presumed innocent until proven guilty so that's an invalid claim. So two, I have no criminal record, can't consider the charges against me because I'm innocent until proven guilty and three, anything that she's tried to present to try to associate me with the crime was one, from a violation of the Fourth Amendment; and two, the other was a farce that does not match the description of my car. And for you to argue that doesn't make much sense because I have the picture here. There's no roof rack on that car. My car for sure has a very big roof rack on it. Thick. You can see it from -- if you can see the car, you can see it.

Two, if you say I'm a flight risk, that I won't show up,

I've had criminal proceedings in the state of Maryland before and I showed up to every one of them. I've showed up to all the hearings here and I've defended myself and have not tried to evade anyone in any way.

Two, there was an illegal search of my home where the doors were broken open, there was grenades thrown in my home. My cameras were destroyed. There was evidence planted in my home. They broke all the interior doors that don't even have locks on them for no reason, they just smashed the doors open and still, I did not run. I was here. I have -- I had a passport which I do not have anymore, they have it. They haven't given it back to me, but I had a passport, had enough money to go anywhere in the world. I did not leave and I did not run from the police officers. If you watch the arrest video, I didn't run from them anywhere.

So to try to advertise me as a flight risk is not -- I'm not a flight risk. Two, I have no violent criminal history. I'm not a danger to society.

**THE COURT:** All right. Thank you, Mr. Turner.

Ms. Hagan, I have reviewed your filing. I will note and you can share anything that you'd like to share. Your memo does refer to two electronic or I guess physical exhibits. Are you in a position to play those today so that the record is clear to make sure that Mr. Turner has an opportunity to hear them and respond to them?

**MS. HAGAN:** I can play them today, Your Honor.

**THE COURT:** That would be helpful for the record.

**THE DEFENDANT:** What are these? So just in case to object before you play these, what are they?

**THE COURT:** They were referred to in the Government's memo and you'll have an opportunity to respond if you would like.

Ms. Hagan, you may proceed.

**MS. HAGAN:** Your Honor, do you wish me to start with the playing of those two?

**THE COURT:** You can start wherever you want.

**THE DEFENDANT:** Can we have a description of what they are?

**THE COURT:** Mr. Turner, it's Ms. Hagan's turn to speak.

**THE DEFENDANT:** Well, before you present something that's probably false or forged to the Court I would like to know what it is so I can object.

**MS. HAGAN:** Your Honor, I do have an extra copy of the Government's memorandum that we did mail to Mr. Turner at CDF, but I'm not sure if he has it in front of him. I can provide it to him.

**THE COURT:** Mr. Turner, this is why Ms. Hagan is --it is clear in the memo and the Government will address this now and now Ms. Hagan has --

**THE DEFENDANT:** What pages are these referenced recordings on?

**THE COURT:** Mr. Turner, Ms. Hagan has turned over to you another copy. So go ahead and the Government can explain what you'd like me to consider and what the evidence is.

**MS. HAGAN:** Yes, Your Honor. Just directing Mr. Turner's attention to the footnotes, footnote 3 explains Government Exhibit 2 and Government Exhibit 3. Government Exhibit 2 is a copy of the recorded call between Detective Reese of the Frederick County Sheriff's Office and the defendant on August 27, 2024; and Government Exhibit 3 is a copy of the recorded call between Special Agent Belcher of the FBI and Mr. Turner on September 18, 2024.

The reason that the Government, Your Honor, introduced those as part of its memorandum in support of our position that Mr. Turner should be detained is at the original hearing before Judge Coulson when the Government, among other proffers, mentioned those statements that Mr. Turner made surrounding his whereabouts that weekend he's continued to refer to those statements as being perjurous by the Government and that we have taken statements out of context. So for that reason, Your Honor, in the most recent memorandum in response to the defendant's appeal of the pretrial detention order, we wanted to provide the Court with those recordings so that Your Honor could hear Mr. Turner's words himself when asked about

his whereabouts that weekend.

**THE DEFENDANT:** Okay, and I'm going to object to that because that has no relevance to proving a flight risk or --

**THE COURT:** Okay, Mr. Turner, your objection --

**THE DEFENDANT:** Can I finish, please?

**THE COURT:** Your objection is noted for the record.

**THE DEFENDANT:** I haven't finished my point. I haven't finished my objection. Can I finish my objection?

**THE COURT:** Your objection is noted for the record. You will have an opportunity to respond to the Government's presentation after they make it.

**THE DEFENDANT:** I would like to object --

**THE COURT:** You've made your objection.

**THE DEFENDANT:** I can object whenever I want.

**THE COURT:** Your objection is overruled. The Government may proceed.

**THE DEFENDANT:** I haven't finished my objection. Can I finish my objection?

**THE COURT:** You stated your objection.

**THE DEFENDANT:** No, I did not. I did not finish. I just told you I didn't finish.

**THE COURT:** In a courtroom when an objection is made you can invoke which rule you are relying on. What rule is the basis for your objection, Mr. Turner?

**THE DEFENDANT:** I believe it's 401, relevance.

**THE COURT:** Okay, understood. I will consider relevance --

**THE DEFENDANT:** And I would say relevant because there's multiple -- there's many case law saying that if -- there's a ton of case law that states if an officer contacts a person and the person does not want to answer a question, that cannot be used in the court as evidence to say that that is an admission of guilt.

And two, I would like to say she references that call out of context. When he asked me anything about where I was I say well, yeah, I was here in Florida. It's not like I didn't go anywhere, but that's true. They show camera evidence, all the camera evidence of me that is shown that's validated of me--

**THE COURT:** Mr. Turner, this is --

**THE DEFENDANT:** Is in the south. It's in Florida.

**THE COURT:** Mr. Turner, this is rebuttal argument. I've overruled your relevance objection; the Government may proceed.

**MS. HAGAN:** Thank you.

**THE COURT:** And before you play, I just ask that you for the record make clear what time and who this is and some context for what we're hearing.

**MS. HAGAN:** Your Honor, the first recording will be Government Exhibit 2 and this is a phone call between Detective Reese of the Frederick County Sheriff's Office and

Mr. Turner. This is a call in which Detective Reese notifies Mr. Turner of the murder of Crimea Baker. And the date of this call is I believe it's August 27, 2024.

**(Whereupon, the video was played.)**

**THE DEFENDANT:** Where is the audio? Can't hear it.

**THE COURT:** Is this the buffering period before the audio begins, as is for a body camera?

**THE DEFENDANT:** Somebody cut the audio off before the video starts? This has doctored audio on it?

**THE COURT:** Ms. Hagan, why don't you pause it if you could and just explain for the record why body camera footage often has a period without audio at the beginning.

**MS. HAGAN:** Yes. Because this recording was made with a body-worn camera, there is a period of -- His Honor has used the phrase "buffering" before the audio starts. However, the phone call in its entirety will be heard.

**THE DEFENDANT:** So who decides the buffering zone? I understand that she has a body camera, right, and the body camera is capturing video and audio at all times. So who cut the audio off?

**THE COURT:** So Mr. Turner, this reflects that you appear to be unfamiliar with the way that body camera footage --

**THE DEFENDANT:** Can somebody --

**THE COURT:** --is generally recorded.

**THE DEFENDANT:** This is post doctored audio. This is post-captured doctored audio.

**THE COURT:** Your objection is considered and overruled and the Government may proceed.

**THE DEFENDANT:** It was more a question. I wasn't objecting to anything. I was just asking what happened to the audio at this point.

**(Whereupon, the video was played.)**

**THE DEFENDANT:** Can you press pause for a second?

**THE COURT:** No.

**THE DEFENDANT:** Yes.

**THE COURT:** No, no. The Government is presenting its evidence.

**THE DEFENDANT:** No. I have a copy of this recording and I say, I tell her I do not hear her.

**THE COURT:** Mr. Turner.

**THE DEFENDANT:** No, in the copy that I have I tell her I do not hear her.

**THE COURT:** Mr. Turner, you just interrupted so that I couldn't hear the evidence that is being presented.

**THE DEFENDANT:** This is redone.

**THE COURT:** Mr. Turner, you just interrupted the Government's presentation of evidence.

**THE DEFENDANT:** Is this video still recording?

**THE COURT:** The evidence is being presented for me

to consider in connection with your detention --

**THE DEFENDANT:** Is this the original recording?

**MS. HAGAN:** This is the original recording.

**THE DEFENDANT:** No. Because in the original recording I say "huh?"

**THE COURT:** Mr. Turner, I will hear your argument about -- Mr. Turner, I will hear any argument that you wish to raise regarding this recording after the recording finishes playing.

I'll ask the Government to play it again from the beginning so that I can hear it.

**(Whereupon, the video was played.)**

**THE COURT:** I'm sorry, can you go back? I missed the part when Mr. Turner interrupted.

**MS. HAGAN:** Yes.

**THE DEFENDANT:** Start from the beginning of the call, please. Let's do it again.

**(Whereupon, the video was played.)**

**THE DEFENDANT:** Can you press pause for a second? No, you need to press pause. This is irrelevant.

**THE COURT:** Quiet.

**(Whereupon, the video was played.)**

**THE COURT:** Mr. Turner, you cannot speak while this evidence is being presented.

**THE DEFENDANT:** The history between -- well, the

history between me and Maryland has nothing to do with what she's calling me for. The reason I don't come to Maryland is because when I left Maryland --

**THE COURT:** Mr. Turner, you will have an opportunity. If you wish to be present in the courtroom for this proceeding you will wait until the evidence is finished.

**THE DEFENDANT:** So you're going to allow me to speak, right? Because this is irrelevant.

**THE COURT:** I have made it very clear to you, Mr. Turner, you will have an opportunity to offer whatever argument in response to the Government's evidence you wish to present. At the moment, at the present I am hearing from the Government and hearing its evidence.

Go ahead, Ms. Hagan.

**MS. HAGAN:** Thank you.

**(Whereupon the video was played.)**

**THE COURT:** Ms. Hagan, can you pause it?

All right, I understand that was the principal portion you wished for me to hear. Are there other portions as well or is that it?

**MS. HAGAN:** There is a little bit of a later portion, Your Honor, just again when Mr. Turner is asked about whether or not there's any name of anyone that he can provide to --

**THE COURT:** Okay, we can just continue to play it.

That's fine.

**MS. HAGAN:** Just on the question of his whereabouts for that weekend.

**THE DEFENDANT:** How would I be able to give you information about someone who I know nothing about and who they're talking to. It doesn't make sense.

**(Whereupon, the video was played.)**

**MS. HAGAN:** Would Your Honor wish me to fast forward a little bit to that part or prefer that I let it play?

**THE COURT:** You can present the evidence as you wish to present it. It's your evidentiary presentation in response to the appeal.

**MS. HAGAN:** Thank you.

**(Whereupon, the video was played.)**

**MS. HAGAN:** Your Honor, I'm going to stop that there at approximately ten minutes into that phone call and then I'll move on to Government Exhibit Number 3 which is the recorded phone call between Mr. Turner and Special Agent Jeffrey Belcher on September 20 --

**THE DEFENDANT:** Is this a time where I can speak to anything that we just listened to?

**MS. HAGAN:** September 18, 2024.

**THE COURT:** Not yet. This is the Government's presentation. You will have an opportunity to respond to their presentation.

**THE DEFENDANT:** We're here to prove a flight risk and a danger to the community, right?

**THE COURT:** Correct.

**THE DEFENDANT:** Now what does that have to do with being a danger to the community or a flight risk?

**THE COURT:** Ms. Hagan, you may proceed.

**THE DEFENDANT:** Okay.

**MS. HAGAN:** Thank you, Your Honor. And Your Honor, this call was initiated by Agent Belcher after Mr. Turner had placed a call to the FBI reporting that his children had been kidnapped. This is Government's Exhibit 3. I'll just play the beginning to introduce the call and then I'll move forward to the relevant portion, Your Honor.

**THE COURT:** This is September 18th?

**MS. HAGAN:** Yes, Your Honor, 2024.

**THE DEFENDANT:** So again, he's speaking and I don't hear audio. Just making a note.

**MS. HAGAN:** This is the buffer period, Your Honor. It's being recorded with a body-worn camera.

**(Whereupon, the video was played.)**

**MS. HAGAN:** Your Honor, I'm going to fast forward to approximately 10 minutes and 15 seconds into the call.

**THE DEFENDANT:** I think we should play the call, the first call for context so we can get a context of why I reached out to him and what was not done. Because this is

very out of context. It has nothing to do with this hearing. This is a very out-of-context conversation that involves a lot of misconduct and illegal activity. And I think the exclusion of the first call is to conceal that.

**THE COURT:** Okay.

**THE DEFENDANT:** The first call is not in line --

**THE COURT:** I'll hear the portion that the Government wishes for me to hear. If there's another portion when we get to your portion, Mr. Turner, I'll hear your contention for why I should hear the additional ten minutes before this.

Ms. Hagan, you may proceed.

**MS. HAGAN:** Thank you. Your Honor, just to remind for the record, the purpose in playing these two calls and eliciting these statements from Mr. Turner here today at this hearing is because at the original hearing the Government outlined the strength of its evidence against Mr. Turner for the murders of Crimea Baker and Sean Lange which is one of the factors for the Court to consider. As part of the strength of the evidence the Government referenced these statements that the Government finds to be not truthful which Mr. Turner stated that during the course of the weekend of the murder he was in Florida at the time. The Government outlined for Judge Coulson and again for Your Honor in our submission at ECF 105 the evidence that the Government -- some of the evidence that

the Government has to establish Mr. Turner's movements that weekend from Florida up north to New Market, Maryland.

So the relevance of these statements is that they contradict the evidence that places Mr. Turner at the crime.

**THE DEFENDANT:** Okay. Before we continue can you please read what you said that I said in the motion, please, before we get to that part?

**THE COURT:** This is not what we're addressing right now.

**THE DEFENDANT:** Well, my objection was that she wrote something --

**THE COURT:** You will have an opportunity to make argument.

**THE DEFENDANT:** Read what she said I said and then we can listen to the video. And what I said was true. She cut what I said and made it a different--

**THE COURT:** Mr. Turner, this is not your time to speak. This is the Government's opportunity. You will have an opportunity to respond and argue why I should not consider this evidence or why you think it's not persuasive with regard to the factors that are relevant under the Bail Reform Act with regard to pretrial detention.

**MS. HAGAN:** Resuming Government's Exhibit 3, Your Honor.

**(Whereupon, the video was played.)**

**MS. HAGAN:** Your Honor, I'm stopping at 10 minutes and 53 seconds into that call.

**THE DEFENDANT:** Okay, can you read what you wrote that I said?

**THE COURT:** Mr. Turner, you'll have an opportunity to respond.

**THE DEFENDANT:** Please, what she wrote that I said. I just want to get it in context.

**THE COURT:** Mr. Turner, I am directing and ordering this is not how this hearing will proceed. It will proceed in an orderly manner. I have heard from you. I am now hearing from the Government. You will have an opportunity to respond. At that time I will hear from you.

Ms. Hagan, go ahead.

**MS. HAGAN:** Thank you, Your Honor.

We are asking the Court to uphold Judge Coulson's order of detention for Mr. Turner. That order was entered at ECF 22. We are seeking continued detention pursuant to 18 U.S.C. 3142(f)(1)(A) and (f)(1)(B) because Mr. Turner is charged with a crime of violence and he is charged with a crime that carries a maximum penalty of life or death.

As Your Honor indicated, we are asking the Court as you pointed out previously to conduct this hearing de novo and you do have the ability to make your independent findings based on the record before you. We're certainly prepared to walk

through the strength of the evidence for Your Honor here today if you choose to proceed to a more full hearing, but we do think that we provided a very detailed record for Judge Coulson. We provided that transcript of the original detention hearing as Government Exhibit 1 that was attached to ECF 105. And we do think that Your Honor can make independent findings based on the record before you to also include the transcripts of prior hearings here in this case. We also introduced transcripts of earlier status conference hearings.

The purpose of introducing those transcripts, Your Honor, also attached to ECF 105, was to establish Mr. Turner's distain essentially for the entire state of Maryland, for Government, the Court.

What he didn't point out during his presentation of his appeal for the detention order is what his plan would be if placed on supervised -- pretrial release: Where he would be living, who he would be living with, what his status of employment would be. All of the things that we typically would expect to hear when somebody is trying to rebut the presumption that's here in favor of detention.

Mr. Turner has only disputed certain aspects of the Government's evidence, but he hasn't really addressed the relevant issues for detention. He just continues to further throw the word "corruption" around, "illegality," "fraudulent conduct." It's the same words that he uses every time he's

here in front of the Court. So based on the track record that he's put here on the record every time we appear before Your Honor how could we possibly expect him to abide by any conditions of supervised release that have been imposed by this Court.

There's no ties to Maryland. He hasn't offered any ties to Maryland. There's just nothing for Your Honor to conclude that he can rebut the presumption that is present in this case which is there are no conditions or combination of conditions to ensure the safety of the community.

The record that the Government has established in our pleadings is by clear and convincing evidence he would pose a danger to the community if he is released given the nature of the charges that he's facing and by at least a preponderance of the evidence that he is a risk of flight if he were to be released.

I'm certainly happy to address further, Your Honor, if you wish to have a full hearing the prong for the Court to consider about the nature and circumstances of the offense and the strength of the evidence.

I will just add to the one point of contention that Mr. Turner mentioned earlier about the photos, those are still photos from videos that the Government has and intends to introduce at trial. Your Honor indicated that based on your review of just those still photos you see a roof rack. In the

videos it's certainly more clear. There's different angles as the vehicle is seen traveling down a road. Some roads are darker than others. Certain parts of the car are highlighted more than others. Just to look at that one picture Mr. Turner is hanging his hat on the fact that that's not a roof rack.

He said the same thing at the detention hearing in front of Judge Coulson when the Government pointed out the fact when we were tracing, piecing together all of the surveillance videos that the detectives and the agents were able to find through Maryland and New Market, piecing together the videos and the movements of the suspect SUV from the Main Street area of New Market to Ms. Baker's neighborhood, past an elementary school, back into the area where that suspect vehicle parked into a visitor's spot.

You have to watch the videos and look at the timing of them and you will see that it appears to be the same suspect SUV that is slowly making its way to Ms. Baker's neighborhood. It's 1:30 in the morning so there are no other vehicles in the area. We're not getting it confused with another --

**THE DEFENDANT:** I object. That's a lie. I watched those vehicles.

**THE COURT:** Mr. Turner, it's not your turn yet. Mr. Turner --

**THE DEFENDANT:** That's a lie. I watched those videos. I don't think you all know that, but I watched those

videos. It's like 20 cars that passed by.

**THE COURT:** Mr. Turner, I'm ordering you to wait until your turn.

Ms. Hagan, anything else?

**MS. HAGAN:** At the hearing before Judge Coulson, Your Honor, Mr. Turner said the same thing. He said I watched the video and that car she's talking about that backs out of the visitor's spot and leaves the neighborhood, all you see is two dots. That's what he said: Two dots, two headlights. You can't make out that video. The surveillance video itself when played will show that it appears to be a silver SUV.

**THE DEFENDANT:** No, the video --

**THE COURT:** Mr. Turner, I haven't -- Ms. Hagan --

**THE DEFENDANT:** Am I going to get a chance to reply?

**THE COURT:** I have told you at least five times you will, Mr. Turner. Come on.

Ms. Hagan, go ahead.

**MS. HAGAN:** And subsequently, Your Honor, just since we're talking about the tracking of the movement of the suspect's silver SUV, the most clear photo outside of Maryland is Mr. Turner's vehicle with its very distinct license plate in Bartow County, Georgia on Sunday afternoon as he's heading back towards Florida, which is inconsistent with his statements to Agent Belcher that he was in Florida all weekend. It's clearly him on the surveillance camera from the

gas station because he's wearing the exact same clothes that he was wearing when he left his apartment on Friday. It's his vehicle. It can't be explained. It's his license plate. And there's a hit on a license plate reader. It's definitively his vehicle. It's him walking from the car into the gas station making a cash purchase and he's on his way back from Maryland.

So that's just a very quick highlight, Your Honor, of the outline of some of the evidence against Mr. Turner that we included in our ECF 105 filing and our original filing for Judge Coulson which I believe was ECF 14.

If there's any other information that the Court wishes me to provide or address I'm happy to do so. Otherwise, our position is that Judge Coulson's conclusions and detention order should be upheld.

**THE COURT:** Understood; thank you.

All right, Mr. Turner.

**THE DEFENDANT:** All right. 18 U.S.C. I think it's 1623 states that to present something to the Court in a context to make it appear as something that it's not is illegal, okay? And I'm going to give you about five instances of her doing that right now.

So the call that she showed with Mr. Belcher is a follow-up call for an initial inquiry that I made about investigating the kidnapping of my children. And the part

that she so willfully skips in that video is Mr. Belcher asking me one or a few times to ask me questions about the death of Crimea, which I say no. And I say look, if you want to ask me questions about that we can get off the phone right now. The only reason we're speaking is to get an update on the information you have about the kidnapping of my children because my children were being held behind armed guard. So that means somebody with a gun was threatening my family who we just trying to see and do a checkup on my children and bring them home to safety. So that's why I called Mr. Belcher. And he asked me if I wanted to talk about Crimea; I said no. So when he starts asking me questions about Crimea, my hesitation is more of I just told you I want the information about my kids, right, which is what we talked about. Okay?

So her trying to preface -- her trying to frame the conversation as him calling or me calling him and being questioned is just not true.

And two, I'm looking for the statement that she wrote here, but in her statement she frames and says that I said I was in Florida the entire weekend. Which if you look at the call, right, one it's three weeks after the murder so this is a month after where I'm fighting for my children. I don't have to think about anything else except for my children who are being held behind armed guard at some woman's house who I

haven't spoken to in ten years, right? When he's asking me these questions I'm not giving him any thought because I already told him I'm not going to talk about that. Right? So I said well yes, I live in Florida. I was here. I had to be here. I've gone all around which I do because I drive and deliver people, packages, and things all through Florida, all throughout the south, all throughout the southeastern U.S.A. every week. She doesn't mention that. I drive thousands of miles every week. Thousands. This is all in the report. They have that. She doesn't mention that, right? And I go everywhere every week. This is routine stuff. So I said yes, I've gone all around, but I've been here in Florida.

And two, when she talks about my hesitation to talk to the state of Maryland it's just completely -- it's just -- one, it's irrelevant; and two, it has nothing to do with -- it has nothing to do with what happened to Crimea.

When I say I'm not talking to the state of Maryland it's because I had charges in Maryland and when those charges were dropped and I did not sign a consent to waiving my right to suing the state because the state had evidence of what was being said about me was false the entire time, the Prince George's County Police Department without my knowledge went and took an order out against me saying that they needed protection from me stating that I was armed and dangerous. This is an ex parte order telling every state patrol cop in

the nation to approach me with caution; I am armed and dangerous.

This I did not know anything about until 2019. I was in Israel. I came back. The custom officer was very -- approached me like I was a terrorist. And he said well, the Prince George's County Police, they say they need protection from you so I need to know who you are. I said Prince George's -- I said, I've never gotten, like Prince George's County Police don't need protection from me. I live in. Florida. Don't forget, I live in Florida. And I didn't believe him. So he showed me the record on the screen and the record on the screen confirmed what he said. It said Prince George's County Police Department v. David Turner. It said Order of Protection. It said approach with caution; armed and dangerous. And he said look, I don't know who you are, I don't know if what you're telling me is true, but I showed him my Florida driver's license and he was okay, so you do live in Florida. You don't live in Prince George's County. I said yes. And I'm coming back from a work trip. I don't even have a criminal history. I've never had any violent encounters with the Prince George's County Police Department.

So he says look, I don't know what happened. I don't know what you did. He was like, don't go up there. He was like this to me, if I read this as an officer, this is a shoot on sight command, right?

So that is my notion of what Maryland intends for me. This is back in 2019. So I cut all contact because I said these people are trying to kill me for no reason. That is why I don't want to talk to anybody from Maryland, especially police, the police. To give it some context, right? And all these things are on the record. I didn't even know about this. They took out an ex parte order against me. I didn't even know about it and I wasn't living in Maryland. They took out the order months after -- I lived in New Jersey for a year and then I moved to Florida. So they took out this order almost a year after I left Maryland.

So when she's saying oh, he doesn't want to answer questions, I clearly state to the lady hey, I have a history with Maryland. You all harassed me, did things. It has nothing to do with Crimea, that has to do with what the police did. They took out a shoot on sight order for me for no reason. I'm a working professional. I don't have any criminal record. They put out a shoot on sight order for me.

So if you think, if you think I shouldn't have any hesitation picking up the phone if it's these people calling me accusing me of something, that is crazy. Okay?

You have to put yourself in my shoes. Imagine you're a working father, it's 2019, minding your business. Imagine you find out a police department for a state you don't even live in takes out a shoot on sight order for you without your

knowledge. That is an attempt to kill me.

**THE COURT:** I understand your points.

**THE DEFENDANT:** Okay. So that's why I don't want to talk to these folks, which I stated many times on the phone, I don't want any dealings with you all. It's because you tried to murder me.

**THE COURT:** I understand.

**THE DEFENDANT:** Not because of the young lady and what happened to her.

**THE COURT:** You said there were four or five points. What's the next one?

**THE DEFENDANT:** Wait. Then she starts talking about well, he doesn't seem to want to answer questions. I already stated why I don't want to talk to these people.

And two, before that, before this happened I received a tax bill from the state of Maryland, which I don't live in. I've been living in Florida for six years. And then I receive a tax bill from Florida. I'm a business owner. I didn't owe any taxes to the state of Florida. And I paid plenty of taxes as far as corporate paying people. I pay plenty of taxes. So I don't owe any money to the Government, right?

So I get these notices, then a few months later I get somebody questioning me about -- I said, okay, these people want to murder me. These people are trying to bring me back to Maryland. So my only intention after picking up the phone

with that woman is to get off the phone as soon as possible. I don't want her knowing where I live, anything, period. These are people who I know tried to have me killed, period.

This is all public record. You can go look at that ex parte hearing; I was not there. You know why? Because I didn't live in Maryland. So why would the Prince George's County Police need protection from me?

If you're talking about the conversation with Belcher, I'm calling about my children who had been kidnapped by some woman who I know is mentally ill. This woman put my mother -- my mother is right there. She put my mother's address on the internet saying I was armed and dangerous. Look for me and my kids. What is that? That means kill me. She tried to kill me. Period.

So yes, I don't want my children with that woman. She put my mother's life in danger, she put my life in danger. And you all wondering, you sitting around why don't you want -- you all know she did that. He had the report that she did that. Before I spoke to him he had the report that she did that. He's a racist. Why the fuck would I want my kids over there? She tried to get me killed. He had -- he had the information in his hand and he hid it.

My children have been over there for two years. And he like oh, well I was with -- it's three weeks later. I know nothing about that girl. They already confirmed that. I

never spoke to that girl. You can't find a message of me talking to that girl. How can I answer questions about somebody's life who I don't know of anything about. You're calling me and you're bothering me. You're trying to catch me up into something to bring me up to this state to fucking kill me, which you already on public record tried to do.

The woman who has my children conveniently also put my mother's address on the internet talking about look for me. Calling for vigilante action to look for me. I'm armed and dangerous -- I don't have a gun on me. Puts my mother's car description on the internet.

So you have my children with somebody behind an armed guard who tried to have me and my mother killed. I'm on the phone with police officers who took out an ex parte order against me in a year I didn't even live in Maryland talking about approaching him with caution, he's armed and dangerous. This is the customs officer's words, not mine. This is a shoot on sight command. So they tried to kill me too.

I don't want to talk to you all. I'm a successful person. I don't run around trying to kill people who I don't know and don't want any contact with me. I'm not calling harassing people. So I want to get off the phone. I don't want to talk to him, I don't want to talk to anybody in this state, period. That's why I live all the way in Florida.

So for her to sit up there, take my words out of context,

right, think about this is three weeks later. I don't know nothing about this. This is not an important date to me. The important thing to me right now is the fact that this woman who did these crazy, illegal actions has my children behind an armed guard. You know why I know she had an armed guard out there? One, your paperwork says it. And two, my sister went over there after I let them know where my children were and what happened. And my sister and her husband who are both well-to-do working people who have a house in Delaware, she says yeah, I go up there just to see the kids. They won't even let me see the kids. And the security who was outside, my husband was talking to him and he went and grip -- he went and reached for his gun towards my husband.

Okay. All right. So yes, now I'm alarmed. That's the only thing I'm calling Mr. Belcher about. I'm not calling him to answer any questions. If she tries to sit there and say I'm sitting there answering the question, you clearly see I don't answer the question. I'm not interested. I already said I'm not answering any questions.

And then beyond that, she takes those words and frames it is and says, I was in Florida all week. First of all, I wasn't paying attention to the question. Third of all, I deliver, I deliver packages every week. See there's thousands of miles on my car every week, right? There's no way I wouldn't say I wasn't all around in Florida, which is what I

said. And if you look at the camera evidence, that's what was proven, that I drove around Florida, as I usually do every week. Nothing different.

And if you look, you stated that there is a roof rack on this car. There are only two pictures of a car that she claims to be mine in Maryland. There's a picture on page 9 which is in Miami, Florida outside of my house. This picture clearly has a roof rack on it. From a very far away distance you can see it. That is in Miami, Florida. Then on page 10 and 11 there is a picture of a car that looks similar to my car and both pictures there is clearly no roof rack. You look at the top of the car you can clearly see the top of the car against the sidewalk which is white. My roof rack is very thick and black. If there was something sticking up off the roof of that car you would see an interruption between the sidewalk. There is nothing, there's no interruption of any black object because it's not there.

If you look on page 11 there's another picture of the car. There's nothing on the top of that car. You can see the entire -- well, this picture is pretty blurry, but the first picture is pretty clear. You can't see anything on the top of that car. Then she lies again and says that I looked at a video and saw no cars except for this car that looked similar to-- I watched the video. That's what she doesn't know. I was in Maryland for a year. I watched those videos. There

was about 20 cars. I looked at the report. There was four cars on her street. This car that she's talking about goes through another entrance from a nearby neighborhood that is not connected to --that's not even connected to her neighborhood. And in the video that she's talking about where this car parks in some auxiliary, the picture from that video is not here. That video is a picture of a white dot, a white dot that goes on and off. And she says yes, that's the car. And then she lies and says you can clearly see the car. I watched the video. It's a white dot, period. That's why there's no picture of it. If you look at the pictures on this video these are pictures of cars driving. Where is the picture of this car parked in some -- it's not there. You know why? Because that picture would be of a white dot.

So one, that white dot, I've looked at the map on here because there was no map in my discovery. That white dot is not even in Crimea's neighborhood. There's no through street from that house to Crimea's neighborhood. You have to go out that neighborhood to go to Crimea's. So one, it's not even in Crimea's neighborhood. Two, that is a white dot. How are you -- what is the point of saying that that is my car. She's standing up here affirming to you that she knows that that is my car. These two pictures don't match the description of my car. These two pictures are of cars that are not in Crimea's neighborhood or on Crimea's street.

Now there are pictures and video evidence of what took place on Crimea's street. There are many cars, about four that leave and enter Crimea's street and cul-de-sac during, before, and after she was murdered or the time that you all claim she was murdered because nobody called until seven hours later. So we don't even know if that's true at this point, right? None of those cars matched the description of my car, period.

And then she stands up there and tells you there was no other cars because it was 2 o'clock in the morning. That's a lie. I've already read the police report. There was four cars that came to that street right before she was allegedly murdered, right, because nobody knows, right? It seems fishy to me because nobody -- she was killed at 2:00 in the morning, but nobody says anything until 7:00 in the morning. So look, I guess we'll take your word for it, right around that time. Around that time there were four cars that came to her street in her cul-de-sac that don't match the description of any car that I have. I have many cars. Don't match the description of any car I have. They came right before she was murdered and they left within three hours after she was murdered. Four different cars. And she stood here and just told you that there was no cars in the area. This is on her street.

Now if we look at the video of the speed camera, she says this is the only car on the speed camera. I watched the speed

camera. There is like four or five, six cars that go by within the ten minutes that I watched. I fast forward to it, it's a bunch of cars that pass on that speed camera. That is a lie. She's lying straight to the Court.

Now she could play that video. I invite you to play that video of the speed camera. And if there's more than one car on that speed camera, she's lying. There's definitely more than one car. I can remember -- I think it was like a white Chevy truck was on that video. I remember. I watched these videos.

And you know what else I watched? I watched the videos of all of the E-ZPass, all of the E-ZPass footage of anything claiming to be my car. Someone stole my E-ZPass number. There was a woman in Maryland going through -- it's a white car, white SUV. It's not my car, in Maryland driving around with my transponder, my old E-ZPass transponder charging my account. That's not my car.

Two, there's another car that's being hit with my license plate. That's not my car. So one, you have people stealing my license plate, driving around, and then you have this woman running around with my E-ZPass, charging my account in some white SUV that's not my car. And then she says yeah, his car hit on some -- she knows my license plate was stolen. I didn't even know my license plate was stolen until I read their paperwork. She knows my license plate was stolen. She

knows my transponder was stolen. Why didn't she say that? Because she's hiding the truth.

**THE COURT:** I understand all the arguments you've made. Is there any final thoughts you'd like me to consider in deciding on your appeal?

**THE DEFENDANT:** I don't expect anything from you all because of what happened with the -- like I said, in 2019 you took out an ex parte order without my knowledge stating that I need to be murdered, right? So I don't expect anything from you all but to try to kill me, right? Which is why we're here today is to try to put me to death, right?

But I would say if you're going to do it in court, do it with the truth. Stop letting her lie about things that you already know. They have my discovery. They showed it to this guy who is not --

**THE COURT:** Mr. Turner, I am not going to rely on any factual assertions or proffers that Ms. Hagan made in court today. I'm going to rely on the evidence that is in the record. I can assure you of that.

**THE DEFENDANT:** And what's the evidence in the record? Because we haven't gone to court. There is no evidence in the record. We're here to prove that I'm a flight risk and that I am a danger to the community. She just mentioned -- everything that she said to offer that I am was a lie. Everything I told you was the truth. I don't have a

passport.

**THE COURT:** Okay.

**THE DEFENDANT:** I didn't run from anybody. I don't have a criminal history. I am innocent until proven guilty so there's no reason to claim that I am a danger to the community or a flight risk. I don't even have a passport and I had plenty of opportunity to run. I was arrested over a month after this happened. I had plenty of time to run. I did not run. And then she proceeds to tell you a bunch of lies that you know are lies and you are about to accept that and say I need to stay here. It doesn't make any sense, man.

**THE COURT:** Thank you, Mr. Turner.

I am prepared to rule on your appeal of the detention order entered by Judge Coulson. Let me first explain what the legal standard is.

**THE DEFENDANT:** And wait, and then she says that she offers that I don't have anywhere to go or I haven't given you. My mother is in the courtroom. She lives in Newark Delaware. I will be here for every court hearing.

And two, what do I plan to do? I am a working professional. I will go back to software development. I will go back to running my businesses which have been shut down on the internet and I will go back to doing what I was doing to make money to support myself which is what I was doing before I was here. I am not a career criminal who has never had a

job. I will go back to software development. I have worked at many companies in this area: AstraZeneca, Booz Allen Hamilton, many of them. Right? I will go back to working. That's what I will be doing. I will go back to working and I would be able to get my discovery which you all are keeping from me. And I will review my discovery and I will show up here and fight my case.

The address that will be provided, it's 45 Glenwood Drive, Newark, Delaware. It's about an hour drive from here. I will be right there.

So for her to say, right, she says to the Court, he hasn't said anywhere that he would go or who he would stay with. That's a lie. At the first hearing my mother was here and I did the pretrial, I did the pre-hearing screen. The woman asked me where I was going to go. I gave her all that information. So why would she sit up here and tell you that I didn't give that information? She just said I didn't give anywhere to go.

Litigation does not involve lying. That's illegal. So the fact that she's lying, you have to strike everything that she said. I just pointed out about five to ten things that she said that were blatant lies. So you have to strike what she has said. She has offered no evidence at all that I am a flight risk or a danger to the community because everything that she just said was a lie. So I ask you to ignore that and

let me go free.

**THE COURT:** Understood.

**THE DEFENDANT:** Nobody is ducking you all. I didn't leave any I didn't go anywhere. Nobody is going to duck or dodging you all. I've showed up here every time. Every time you made a false allegation against me I've come up here and proven it to be false. And I let you all drag me through court after I proved it to be false over a year. And nobody is ducking and dodging you all. So the fact that you say I won't show up is just -- it's not true.

**THE COURT:** I understand.

All right, I've heard from Mr. Turner, I've heard from the Government. I have consulted the transcript of the hearing, of the full detention hearing in front of Judge Coulson. I have heard the arguments of both Mr. Turner and the Government presented here at this hearing today.

As I said at the beginning, this is a de novo review under the Bail Reform Act. And I have conducted that de novo review and I will be affirming the order of detention.

Let me explain my reasoning and I'll start by explaining what the legal standard is under the Bail Reform Act. Under the Bail Reform Act that was enacted by the U.S. Congress and that binds my decision-making here, I have two main considerations under the statute: Risk of flight and dangerousness to the community.

In every case where the Government seeks for a person to be detained while awaiting trial to detain a person who by definition is presumed innocent of the charges as Mr. Turner is presumed innocent of the charges, the Government bears the burden in the context of a detention hearing of demonstrating that, quote, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." That's 18 U.S. Code § 3142(e) and (f).

Where the Government seeks to make a showing based on the claim of danger to the community it must prove any facts in support of such a requested finding by clear and convincing evidence. That's in § 3142(f)(2).

The Government here has also relied on what has been referred to as a presumption of detention. In this case the Government has moved for detention under 3142(f)(1)(A) and (f)(1)(B) that creates a burden of production on the defense with regard to whether there are conditions of supervision that would be adequate to reasonably assure the person's appearance in court as required and the safety of the community. The presumption shifts the burden of production; it does not shift the burden of persuasion. The burden of persuasion remains on the Government to prove that no combination of conditions will reasonably assure the appearance of the person as required and the safety of any

other person in the community.

Here I do find that the presumption applies. Even where the presumption applies, however, as I've said, that simply means that the burden of production shifts to the defense to come forward with at least some evidence that there are conditions that would reasonably assure the appearance of the person as required and the safety of the community.

Often as Mr. Turner has presented here, that evidence takes the form of a proposed plan or conditions of release to assure the Court that the defendant will appear and not pose a danger to the community while appearing at trial.

Against this backdrop I have to consider a number of factors including the nature and seriousness of any danger that's proven by clear and convincing evidence to any person or to the community that would be posed by the person's release. Although a defendant is presumed innocent of charges and nothing in the Bail Reform Act modifies or limits that presumption of innocence, I have to consider the evidence and any proffer. But here, evidence has been presented, not just a proffer of the nature and circumstances of the offense charged, as well as the weight of the evidence supporting the charges. In addition, I must consider the defendant's history and personal characteristics.

Here, after considering all of the factors and the information presented both before Judge Coulson which I have

reviewed as a de novo matter, as well as the evidence that has been presented through the submissions, the written submissions and presented in court here today, I conclude that the Government has proven both by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Mr. Turner as required.

I also find that the Government has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

With regard to danger to the community, that finding is based on the evidence, as I said, presented, including the surveillance videos, the stills from the surveillance videos that were in the submission, the license plate reader, the possession of firearms, ammunition that were found in connection with searches, in addition to the other evidence that has been presented.

With regard to the risk of flight, there is a significant incentive to flee in this case given the charges. It is clear to me that Mr. Turner would have the means to flee and there is evidence that he was holding a passport when arrested. He's made the point that that passport is no longer in his possession, but it is evidence to me that there is a risk of flight.

And therefore, for these reasons the Government has shown

there is no condition or combination of conditions that would reasonably assure the appearance of Mr. Turner as required and the safety of any other person in the community.

**THE DEFENDANT:** All right, Your Honor, I just want it clear for the record you just stated that there was a firearm found in my possession that matched what was used and that's not true. The firearm that is in this motion is a 9 millimeter. To my knowledge the firearm that was used --

**THE COURT:** I did not say anything about a match. I did not say anything about a match.

**THE DEFENDANT:** Because I had a firearm? Just because I had firearms? It's my Second Amendment right. It can't be used as evidence against me. I have a Second Amendment right to have firearms, especially when there's a police department putting hits out on me.

**THE COURT:** The next topic for the hearing today is discovery. So Mr. Turner, we've talked about this before. The discovery has been produced to standby counsel and is available for you to review. Have you taken advantage of your opportunity to review the discovery?

**THE DEFENDANT:** I will not meet with the standby counsel. I just noted to you the misconduct that is in the docket that's proven, that the illegal action that the standby counsel allowed to be taken against me. At this point I don't -- they've shown my discovery to I believe Dr. Corvin or

whoever he was without my consent. My discovery is not safe with them and I will not meet with them or work with them. They are clearly acting on your behalf, right, so we're going to have to find something else to do.

I am staying in a single cell by myself. There is a plug there. I have evidence here that I'm able to order an Xbox, I'm able to order an SD storage card. I'm able to order a TV. These items all have the same components that a computer would have. So I would say you all have confiscated computers from me, about two or three of them. You can give me one of my computers or you can give me any computer with the discovery on it that is locked and I can look at my discovery in my single cell with whatever I have that I have a plug. I can look at it in my cell. It won't be shown to anyone.

As far as these folks, we have already proven that they are showing my discovery which is against the law without my consent to people who are not part of my defense. So my discovery is not being held safely and it's being distributed to folks who are not a part of my defense. So that is just corruption, the entire trial itself because we don't know who else they've shown it to, but we know for a fact they'll show it to anybody who they want to. So they'll put anything they want in there and show it to a jury, anything. So you guys pretty much invalidated any kind of merit that you had of going to trial and trying to find a conviction right there.

We know for a fact that they're giving my discovery out to people. I don't want my discovery in their possession anymore. Please take it back from them and give it to me where it was safe and not shown to anyone. I had my discovery for almost a year. I had it for almost 10 months. It wasn't shown to anybody. We can keep it password protected. I am in a single cell by myself. There's no chance that anybody else will be placed in there. So it will be protected. And if we talk about delivering or what do you call it, distributing to other folks in the jail, if it's on the computer, right, I can't distribute it to anyone. I can't show it to anyone because I'm never around anyone. So that argument of being able to disperse, be able to what do you say, distribute it throughout the jail is just is gone. You put it on a computer, I can't give it to anyone.

As far as printing out copies, I'll attest that all the copies that I will print of anything will be to file motions. Period.

**THE COURT:** Okay. I am not going to permit the discovery to be held by Mr. Turner at the pretrial detention facility itself.

Let me ask the Government the following:

**THE DEFENDANT:** Are you willing to take my discovery from them? Because they've already distributed my discovery to folks who are not a part of my defense, who don't work for

the state or federal Government. It's George Corvin.

**THE COURT:** Your standby counsel -- it is not up to you whether standby counsel is appointed.

**THE DEFENDANT:** No, I said they distributed my discovery --

**THE COURT:** And standby counsel --

**THE DEFENDANT:** Without my consent.

**THE COURT:** And standby counsel is entitled to possession and use of the discovery consistent with their obligations under the applicable standards and under their ethical obligations.

**THE DEFENDANT:** But that's not what I just said to you. I said that they distributed by discovery -- I actually gave -- I actually revoked any consent that they would have from me. I said -- I have the email here. I told them not to show my discovery to anyone because I knew that's what they will be doing because they're working for you.

And I spoke to George Corvin. I have a contract here. So you can't deny whether I spoke to him. It's on video. He talks about my discovery in depth. So they're showing my discovery to people who are not a part of my defense without my consent who can speak to the jury, who can speak to anyone, right? So that is a breach of their fiduciary responsibility and it's misconduct. They could be disbarred for doing things like that.

**THE COURT:** No, that's not true.

**THE DEFENDANT:** How is it not true? They're allowed to show my discovery to whoever they want.

**THE COURT:** Ms. Hagan, my question for you is the following: So I know in some circumstances where a person is representing themselves and there is standby counsel but that the discovery is placed on a secure laptop and arrangements are made for the defendant to be brought to the courthouse on a schedule. What would be the Government's position as making that as another option? I do find that the procedure that has been followed thus far is appropriate and permitted, but this would be another way for Mr. Turner to review his discovery without the need for standby counsel to be present themselves.

So the proposal would be and my question is what the Government's position is is that the Government and/or standby counsel would -- and I'll ask standby counsel for their position as well, would make the discovery available for Mr. Turner here in a blocked cell at the courthouse to review here on a given schedule.

**MS. HAGAN:** Yes. I think what we had originally proposed was that we could work with standby counsel's schedule, arrange for Mr. Turner's transportation whether it was weekly, multiple times a week. And our understanding from the marshals is that Mr. Turner could review discovery with standby counsel on a laptop in one of the rooms. That would

be the Government's preference out of the two options that you just outlined. The second option being he would be provided a laptop with the discovery to review on his own at the courthouse. I would need to look into that.

I do think that in one other instance, the name of the case is escaping me from this district, it was a wire fraud white collar case with Mr. Gruber. And I had inquired of Mr. Gruber who had provided the laptop that was the topic of discussion in some correspondence with the Court for a pro se defendant to review. And he advised that ultimately it was the Court that provided a laptop.

Now there is some age to this case. I don't know if that's an option, but I would certainly need to look into whether or not the Government could provide the marshals a laptop for Mr. Turner to review the discovery by himself here at the courthouse.

The Government's preference and what we have done in other cases more recently is to have standby counsel present so that the discovery can be reviewed together on standby counsel's laptop.

**THE COURT:** I understand it's a preference; but in this circumstance I'm determining whether there's an alternative procedure that would not require the presence of standby counsel. And so you're not at present in a position to support or object to that procedure?

**MS. HAGAN:** Correct. I would just need to follow up on the question of a laptop from the U.S. Attorney's Office that I presume would remain in the custody of the marshals for Mr. Turner to review discovery while he's here.

**THE COURT:** Okay.

Mr. Turner, I'll hear from you in just a minute because there was a question about logistics. I'm going to ask standby counsel is there any information or any position with regard to that alternative procedure for discovery?

**MR. SZEKELY:** We have the technical capability to provide a laptop with discovery loaded on say an external hard drive and the laptop itself would have the software necessary to Adobe Acrobat, Cellebrite view or whatever it would be to review the discovery. And presumably it would then also be sort of locked down so it has no internet access. So you view materials, perhaps take notes on it to review later, but not communicate outside the confines of the laptop.

**THE COURT:** All right.

Mr. Turner, anything that you'd like to say on that? I'm not going to order it right now. I will give the Government one week to respond and state any objection and the basis for it, if there is any. But while they're here, Mr. Turner, anything on that?

**THE DEFENDANT:** As far as coming to the courthouse to review the discovery, I don't think that would be an issue

based on my request because what I requested is that my discovery be taken from standby counsel and to remove standby counsel. And I would offer I do need to review these materials sooner than later. So I do not have an issue with staying in the courthouse. Like I told you, I'm already in a room by myself. I have no qualms about or any objections to staying in the courthouse so I can review these -- the discovery as quickly as possible.

But what I would like to add to that is I do need the capability to print out what I need to print out and I do need the capability to take photos on the computer. So there are some instances where people put a computer in front of you and tell you not to touch it, but I do need to be able to take photos, stills because there are things that were said in this hearing about frames of videos and what was in a video and what was not in a video that I will be disputing. So I need to be able to take screenshots and be able to print those out so I can show that that is, in fact, not true. And those will be motions that will be filed. So I would say one, I want my discovery removed from standby counsel. Two, after this I would like to call standby counsel to testify, to understand how much of my discovery they showed to George Corvin and who else they showed my discovery to. And three, I need to know -- as far as the access, I would like more access than being transported back and forth between the Court.

I'm in a cell by myself. I don't understand what the difference is. There's state personnel at CDF and I'm in a cell by myself. If you all would rather me be in a cell by myself at the courthouse, that's fine. I will move my stuff here to review my discovery. I would rather just stay here so I can review my discovery 24/7.

**THE COURT:** So I'll look out for -- was there something else from the Government?

**MS. HAGAN:** No, Your Honor. If I could just clarify. The position that you want the Government to respond to within a week is the amenability to having Mr. Turner brought here and reviewing the materials by himself in the lockup area of the U.S. marshals with --

**THE COURT:** Without standby counsel.

**MS. HAGAN:** Without standby counsel, perhaps on a laptop that they're able to provide.

**THE COURT:** Well, that's what I would ask you all to work out and figure out the logistics.

**MS. HAGAN:** Okay, thank you.

**THE COURT:** I am not in a position to say on that. So let me --

**THE DEFENDANT:** I would like to --

**THE COURT:** So to be clear, that yes, that is what I need to hear the Government's position on within a week.

Mr. Turner, that procedure that I'm envisioning and that

the Government will be addressing is for your ability to review on a laptop the discovery that's not necessarily addressing printing out for motions or the like. If this procedure is in place and you follow it and review the discovery and have specific requests with regard to the procedure, you can file a motion for a modification or another relief. At present, I'm not ordering anything beyond making that access available. You already have access by coordinating with standby counsel and could make requests of them to print material if you need to for purposes of motions. You are thus far declining to use that procedure. So I'm offering this additional option potentially depending on what the Government's position is.

**THE DEFENDANT:** Okay. And in reply to that before we move on, the first time that I met with defense, with the standby defense counsel I asked them specifically to start writing copies of the motions that I filed in the state court. And I asked them specifically to start making copies of the evidence that I submitted to the state court. They declined. So the statement that I will be able to ask them for paperwork to print out is false. The things that I've requested from them I've gotten about maybe 5 percent of it.

**THE COURT:** Mr. Turner, you are making a decision --

**THE DEFENDANT:** They do what they want to do.

**THE COURT:** You're making a decision to represent

yourself and there are some consequences and some of them are--

**THE DEFENDANT:** You stated that I would be able to get whatever I asked for from them. I'm stating -- I have right here, I have an email where I state what I want them to do. If we look at the court proceedings --

**THE COURT:** No, I did not say whatever you want --

**THE DEFENDANT:** And the motions that they filed, they did the exact opposite of what I told them to do.

**THE COURT:** No, that is not --

**THE DEFENDANT:** So they do not do what I asked them to do.

**THE COURT:** When you represent yourself you do not have a right to direct standby counsel to act on your behalf.

**THE DEFENDANT:** You just stated that I can ask them for whatever I need.

**THE COURT:** I said --

**THE DEFENDANT:** And now you're stating that I can't ask them.

**THE COURT:** Then let me state what my order is. I need you to review your discovery so that this case can proceed further. You are unreasonably refusing to review your discovery at present because you do not apparently wish to be in the same room as standby counsel. That is unreasonable and that is not a basis for your refusal to review discovery. I

have requested the Government's position on this alternative procedure. I will receive the Government's position and then rule on this issue. If there are concerns or requests with regard to that procedure going forward I will consider any motions.

I'm looking at the calendar for the next hearing and I would --

**THE DEFENDANT:** I would like to call standby counsel to testify before we move on.

**THE COURT:** No. That request --

**THE DEFENDANT:** This is an issue that -- we're hearing the motion for discovery, right? And I have the right to call someone. I call you all to testify.

**THE COURT:** That request --

**THE DEFENDANT:** You're going to deny me my right to testify and for them to be cross-examined?

**THE COURT:** I now have twice I think, if not just three times overruled your request, denied.

So I would be looking at either the afternoon of May 7th or sometime on May 8th.

**MS. HAGAN:** Are you saying May, Your Honor?

**THE COURT:** May. So that's about five or six weeks out.

**MS. HAGAN:** Both are available dates for the Government.

**THE COURT:** Standby counsel?

**MR. SZEKELY:** Your Honor, likewise, both are available for us. I think possibly Thursday I think that would be a little better for us. Thank you.

**THE COURT:** All right, I'll set the next case management conference on Thursday, May 7th at 2:30 p.m.

**THE DEFENDANT:** Are you going to ask me when I want to have the status hearing? You ask them, but you don't ask me.

**THE COURT:** Is there any objection to that date, Mr. Turner?

**THE DEFENDANT:** I was just asking. You don't think it's important to ask me when I can show up and be prepared to represent myself when I'm representing myself but you ask them?

**THE COURT:** You are in pretrial detention and the marshals will bring you over when I direct them to.

**THE DEFENDANT:** I need to prepare. So you don't think it's important to ask me whether I'm going to be prepared on that date, but you ask standby counsel?

**THE COURT:** Your obligation is to review discovery. This is a case management conference to address if there are outstanding issues that are appropriate to address. This is not a hearing. It is not a trial. It will be held on Thursday, May 7th at 2:30 p.m.

**THE DEFENDANT:** Will we be removing the discovery from standby counsel?

**THE COURT:** No.

**THE DEFENDANT:** Is there any doubt in your mind that George Corvin reviewed my discovery?

**THE COURT:** Mr. Turner, we've addressed this. You do not have a right to object to that sharing.

**THE DEFENDANT:** So we're going to keep my discovery with the people who are showing it to whoever they would like. Okay.

**THE COURT:** Is there anything else -- I'll ask you, Mr. Turner, in a moment. But Government, from the Government's perspective is there anything else that you wish to bring to my attention or that you think I should address today?

**MS. HAGAN:** No. Thank you.

**THE COURT:** Mr. Turner, anything else?

**THE DEFENDANT:** No.

**THE COURT:** Okay. Have a good day, everyone.

**(Whereupon, the proceeding was concluded at 11:48 a.m.)**

**CERTIFICATE OF OFFICIAL REPORTER**

I, Nadine M. Bachmann, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 9th day of April, 2026.

*-S-*

______________________________________
NADINE M. BACHMANN RMR, CRR
FEDERAL OFFICIAL COURT REPORTER

## 1

**1** [2] - 17:7, 32:5
**10** [6] - 7:25, 28:22, 31:1, 45:9, 58:5
**105** [5] - 16:11, 29:24, 32:6, 32:11, 36:10
**10:08** [1] - 2:2
**11** [2] - 45:10, 45:18
**11/12** [1] - 7:21
**11/17** [1] - 9:16
**11:48** [1] - 69:20
**13** [1] - 7:25
**13th** [1] - 10:18
**14** [3] - 9:17, 14:19, 36:11
**15** [1] - 28:22
**1623** [1] - 36:19
**164** [1] - 4:9
**168** [1] - 6:23
**17** [1] - 8:2
**17th** [2] - 9:10, 9:19
**18** [5] - 20:13, 27:22, 31:18, 36:18, 53:8
**18th** [3] - 9:18, 9:21, 28:14
**1984** [1] - 6:23
**1:30** [1] - 34:18

## 2

**2** [4] - 20:8, 20:9, 22:24, 47:10
**20** [3] - 27:19, 35:1, 46:1
**2000** [1] - 5:17
**2008** [1] - 4:7
**2015** [1] - 6:6
**2017** [1] - 6:21
**2019** [4] - 39:3, 40:2, 40:23, 49:7
**2024** [5] - 20:11, 20:13, 23:3, 27:22, 28:15
**2026** [2] - 1:9, 70:14
**204** [1] - 5:17
**21201** [1] - 1:15
**22** [1] - 31:18
**24** [2] - 9:18, 14:18
**24/7** [1] - 64:6
**25-0352** [1] - 2:4
**253** [1] - 6:21
**25th** [1] - 17:8
**27** [3] - 1:9, 20:11, 23:3
**28** [1] - 70:8
**2:00** [1] - 47:14
**2:30** [2] - 68:6, 68:25

## 3

**3** [6] - 20:7, 20:8, 20:11, 27:17, 28:11, 30:23
**3142(e** [1] - 53:9
**3142(f)(1)(A** [2] - 31:19, 53:16
**3142(f)(2)** [1] - 53:13
**36** [1] - 1:15

## 4

**401** [1] - 21:25
**45** [1] - 51:8
**46** [1] - 5:3
**465** [1] - 6:23
**4th** [1] - 1:15

## 5

**5** [1] - 65:22
**53** [1] - 31:2
**54** [1] - 4:9
**553** [1] - 5:17

## 7

**715** [1] - 6:20
**753** [1] - 70:8
**7:00** [1] - 47:15
**7D** [1] - 1:10
**7th** [3] - 67:19, 68:6, 68:25

## 8

**8th** [1] - 67:20

## 9

**9** [2] - 45:6, 56:7
**9th** [1] - 70:14

## A

**a.m** [2] - 2:2, 69:21
**ABA-25-0352** [1] - 1:4
**ABELSON** [1] - 1:8
**abide** [2] - 7:2, 33:3
**ability** [2] - 31:24, 65:1
**able** [16] - 7:2, 7:8, 27:4, 34:9, 51:5, 57:6, 57:7, 58:13, 63:13, 63:17, 64:16, 65:20, 66:3
**above-entitled** [1] - 70:10
**absolute** [1] - 5:25
**abuse** [1] - 5:18
**accept** [1] - 50:10
**access** [5] - 62:15, 63:24, 65:8
**account** [2] - 48:17, 48:21
**accused** [6] - 5:11, 5:12, 5:13, 5:14, 6:24, 7:13
**accusing** [1] - 40:21
**Acrobat** [1] - 62:13
**Act** [5] - 30:21, 52:18, 52:21, 52:22, 54:17
**act** [1] - 66:14
**acting** [2] - 6:5, 57:3
**action** [5] - 6:11, 7:19, 13:3, 43:9, 56:23
**actions** [2] - 7:9, 44:4
**activity** [1] - 29:3
**actually** [3] - 17:14, 59:13, 59:14
**ADAM** [1] - 1:8
**adamant** [1] - 9:8
**add** [2] - 33:21, 63:9
**addition** [3] - 5:21, 54:22, 55:16
**additional** [3] - 3:1, 29:10, 65:12
**address** [11] - 3:1, 4:14, 19:24, 33:17, 36:13, 42:11, 43:8, 51:8, 68:22, 68:23, 69:14
**addressed** [3] - 11:19, 32:22, 69:6
**addresses** [1] - 5:1
**addressing** [5] - 2:20, 3:4, 30:8, 65:1, 65:3
**adequate** [1] - 53:19
**admission** [1] - 22:8
**Adobe** [1] - 62:13
**advantage** [1] - 56:19
**advertise** [1] - 18:16
**advised** [2] - 3:11, 61:10
**affirming** [2] - 46:22, 52:19
**after** [18] - 9:7, 10:4, 10:15, 21:11, 25:8, 28:9, 37:22, 37:23, 40:9, 40:11, 41:25, 44:7, 47:4, 47:21, 50:8, 52:8, 54:24, 63:20
**afternoon** [2] - 35:22, 67:19
**against** [19] - 10:11, 12:5, 12:12, 13:3, 14:15, 14:17, 17:13, 17:16, 29:17, 36:9, 38:23, 40:7, 43:15, 45:13, 52:6, 54:12, 56:13, 56:24, 57:16
**age** [1] - 61:12
**agenda** [1] - 2:16
**Agent** [5] - 2:5, 20:12, 27:18, 28:9, 35:24
**agents** [1] - 34:9
**ago** [3] - 9:7, 10:18, 11:25
**ahead** [4] - 20:4, 26:14, 31:14, 35:17
**aid** [1] - 5:12
**Aided** [1] - 1:25
**alarmed** [1] - 44:14
**allegation** [1] - 52:6
**allegedly** [1] - 47:12
**Allen** [1] - 51:2
**allow** [1] - 26:7
**allowed** [10] - 8:24, 12:7, 12:8, 14:8, 14:10, 14:17, 14:18, 15:22, 56:24, 60:2
**allowing** [1] - 12:4
**alluded** [1] - 4:2
**almost** [3] - 40:11, 58:5
**already** [15] - 9:9, 11:18, 13:6, 15:17, 38:3, 41:13, 42:25, 43:6, 44:18, 47:11, 49:14, 57:15, 58:24, 63:5, 65:8
**alternative** [3] - 61:23, 62:9, 67:1
**although** [2] - 4:17, 54:16
**amenability** [1] - 64:11
**Amendment** [7] - 4:1, 6:25, 15:17, 15:22, 17:19, 56:12, 56:14
**America** [1] - 2:4
**AMERICA** [1] - 1:3
**ammunition** [1] - 55:15
**among** [1] - 20:17
**and/or** [1] - 60:15
**Andrew** [2] - 1:21, 7:21
**andrew** [1] - 2:13
**angles** [1] - 34:1
**another** [12] - 4:22, 6:6, 6:22, 20:4, 29:8, 34:19, 45:18, 46:3, 48:18, 60:10, 60:12, 65:6
**answer** [6] - 22:6, 40:12, 41:13, 43:2, 44:16, 44:18
**answering** [2] - 44:17, 44:19
**anybody** [8] - 17:9, 17:10, 40:4, 43:23, 50:3, 57:22, 58:6, 58:7
**anymore** [3] - 16:3, 18:11, 58:3
**anyone** [12] - 12:3, 14:7, 18:4, 26:23, 57:14, 58:4, 58:11, 58:12, 58:15, 59:16, 59:22
**anything** [36] - 7:16, 12:1, 12:2, 12:10, 13:7, 13:24, 14:21, 15:7, 15:16, 17:17, 18:21, 22:10, 24:6, 27:21, 35:4, 37:24, 39:3, 42:2, 43:3, 45:21, 47:15, 48:12, 49:6, 49:9, 56:9, 56:10, 57:22, 57:23, 58:17, 62:19, 62:23, 65:7, 69:11, 69:13, 69:17
**anywhere** [7] - 18:13, 18:15, 22:12, 50:17, 51:12, 51:18, 52:4
**apartment** [1] - 36:2
**apparently** [1] - 66:23
**appeal** [12] - 2:17, 2:19, 3:6, 3:21, 7:5, 7:6, 11:21, 20:23, 27:12, 32:15, 49:5, 50:13
**appealed** [1] - 2:21
**appear** [5] - 16:12, 23:22, 33:2, 36:20, 54:10
**appearance** [10] - 8:24, 9:1, 9:9, 14:16, 53:7, 53:20, 53:25, 54:6, 55:6, 56:2
**appearing** [1] - 54:11
**appears** [2] - 34:16, 35:11
**applicable** [1] - 59:10
**applies** [2] - 54:2, 54:3
**appoint** [2] - 5:12, 6:12
**appointed** [3] - 8:1, 12:6, 59:3
**appointing** [1] - 6:19
**approach** [2] - 39:1, 39:14
**approached** [1] - 39:5
**approaching** [1] - 43:16
**appropriate** [2] - 60:11, 68:23

**approximately** [2] - 27:16, 28:22
**April** [1] - 70:14
**area** [7] - 4:8, 34:11, 34:13, 34:19, 47:23, 51:2, 64:13
**argue** [2] - 17:21, 30:19
**argument** [6] - 22:16, 25:6, 25:7, 26:11, 30:13, 58:12
**arguments** [2] - 49:3, 52:15
**armed** [11] - 37:7, 37:25, 38:24, 39:1, 39:14, 42:12, 43:9, 43:12, 43:16, 44:5
**around** [13] - 32:24, 38:5, 38:12, 42:17, 43:20, 44:25, 45:2, 47:16, 47:17, 48:15, 48:20, 48:21, 58:12
**arrange** [1] - 60:22
**arrangements** [1] - 60:7
**arrest** [1] - 18:14
**arrested** [2] - 50:7, 55:21
**ask** [21] - 16:9, 22:20, 25:10, 37:2, 37:4, 51:25, 58:22, 60:16, 62:7, 64:17, 65:20, 66:15, 66:19, 68:7, 68:8, 68:13, 68:14, 68:19, 68:20, 69:11
**asked** [12] - 9:3, 9:4, 10:12, 20:25, 22:10, 26:22, 37:11, 51:15, 65:16, 65:18, 66:4, 66:11
**asking** [7] - 24:6, 31:16, 31:22, 37:2, 37:12, 38:1, 68:12
**aspects** [1] - 32:21
**assert** [3] - 7:17, 8:17, 10:9
**asserting** [1] - 12:18
**assertions** [1] - 49:17
**associate** [1] - 17:18
**assure** [9] - 49:19, 53:7, 53:19, 53:24, 54:6, 54:10, 55:6, 55:9, 56:2
**AstraZeneca** [1] - 51:2
**attached** [2] - 32:5, 32:11
**attempt** [1] - 41:1
**attention** [3] - 20:7, 44:22, 69:14
**attest** [1] - 58:16
**ATTORNEY** [1] - 1:14
**Attorney** [1] - 3:13
**attorney** [2] - 8:1, 12:6
**Attorney's** [1] - 62:2
**attorneys** [2] - 8:25, 9:12
**audio** [12] - 23:5, 23:7, 23:8, 23:9, 23:12, 23:15, 23:19, 23:20, 24:1, 24:2, 24:7, 28:17
**August** [3] - 17:8, 20:11, 23:3
**auxiliary** [1] - 46:6
**available** [6] - 5:13, 56:19, 60:17, 65:8, 67:24, 68:3
**awaiting** [1] - 53:2
**aware** [2] - 3:18, 11:3
**away** [3] - 16:21, 17:4, 45:8

**B**

**B** [1] - 1:8
**Bachmann** [1] - 70:5
**BACHMANN** [1] - 70:17
**back** [20] - 7:16, 9:10, 14:3, 18:12, 25:13, 34:13, 35:23, 36:6, 39:4, 39:19, 40:2, 41:24, 50:21, 50:22, 50:23, 51:1, 51:3, 51:4, 58:3, 63:25
**backdrop** [1] - 54:12
**backs** [1] - 35:7
**baffling** [1] - 13:21
**Bail** [5] - 30:21, 52:18, 52:21, 52:22, 54:17
**Baker** [2] - 23:2, 29:18
**baker's** [2] - 34:12, 34:17
**Baltimore** [2] - 1:10, 1:15
**Banan** [4] - 1:21, 2:14, 7:22, 9:11
**Bartow** [1] - 35:22
**based** [8] - 13:18, 31:24, 32:7, 33:1, 33:24, 53:10, 55:12, 63:1
**basis** [3] - 21:24, 62:21, 66:25
**bears** [1] - 53:4
**BEFORE** [1] - 1:8
**begin** [1] - 7:4
**beginning** [5] - 23:12, 25:11, 25:16, 28:12, 52:17
**beginnings** [1] - 5:6
**begins** [1] - 23:7
**behalf** [6] - 2:6, 12:1, 12:2, 13:7, 57:3, 66:14
**BEHALF** [1] - 1:12
**behavior** [1] - 6:18
**behind** [4] - 37:7, 37:25, 43:12, 44:4
**being** [25] - 7:9, 8:19, 8:25, 10:3, 10:11, 12:19, 13:1, 14:6, 20:20, 24:20, 24:25, 25:24, 28:5, 28:19, 37:7, 37:17, 37:25, 38:21, 48:18, 57:18, 58:12, 61:2, 63:24
**Belcher** [11] - 1:23, 2:5, 20:12, 27:19, 28:9, 35:24, 36:23, 37:1, 37:11, 42:8, 44:15
**believe** [5] - 21:25, 23:3, 36:11, 39:11, 56:25
**better** [1] - 68:4
**between** [9] - 10:1, 20:9, 20:12, 22:24, 25:25, 26:1, 27:18, 45:15, 63:25
**beyond** [3] - 14:22, 44:20, 65:7
**big** [1] - 17:23
**bill** [2] - 41:16, 41:18
**binds** [1] - 52:23
**bit** [3] - 3:1, 26:21, 27:9
**black** [5] - 13:4, 13:13, 16:24, 45:14, 45:17
**blatant** [1] - 51:22
**blocked** [1] - 60:18
**blown** [1] - 2:24
**blurry** [1] - 45:20
**body** [7] - 23:7, 23:11, 23:14, 23:18, 23:22, 28:19
**body-worn** [2] - 23:14, 28:19
**Booz** [1] - 51:2
**both** [8] - 9:22, 44:8, 45:11, 52:15, 54:25, 55:4, 67:24, 68:2
**bothering** [1] - 43:4
**breach** [1] - 59:23
**break** [2] - 12:12, 14:17
**breaking** [4] - 10:1, 12:4, 12:5, 12:20
**bring** [5] - 37:10, 41:24, 43:5, 68:17, 69:14
**broke** [1] - 18:8
**broken** [6] - 10:11, 12:19, 13:1, 14:15, 18:6
**brought** [6] - 10:3, 13:3, 13:12, 17:13, 60:8, 64:12
**buffer** [1] - 28:18
**buffering** [3] - 23:6, 23:15, 23:17
**bunch** [2] - 48:3, 50:9
**burden** [6] - 53:5, 53:17, 53:21, 53:22, 54:4
**business** [2] - 40:23, 41:18
**businesses** [1] - 50:22
**BY** [2] - 1:13, 1:18

**C**

**C** [2] - 1:11, 2:1
**calendar** [1] - 67:6
**California** [1] - 4:25
**call** [29] - 10:3, 15:15, 20:9, 20:12, 22:9, 22:24, 23:1, 23:3, 23:16, 25:17, 27:16, 27:18, 28:9, 28:10, 28:12, 28:22, 28:23, 28:24, 29:4, 29:6, 31:2, 36:23, 36:24, 37:22, 58:9, 63:21, 67:8, 67:13
**called** [4] - 10:15, 13:5, 37:10, 47:5
**calling** [11] - 2:3, 26:2, 37:17, 40:20, 42:9, 43:4, 43:9, 43:21, 44:15
**calls** [1] - 29:14
**came** [4] - 39:4, 47:12, 47:17, 47:20
**camera** [17] - 22:12, 22:13, 23:7, 23:11, 23:14, 23:18, 23:19, 23:22, 28:19, 35:25, 45:1, 47:24, 47:25, 48:1, 48:3, 48:6, 48:7
**cameras** [1] - 18:7
**can't** [14] - 13:8, 14:19, 17:15, 23:5, 35:10, 36:3, 43:1, 45:21, 56:13, 58:11, 58:15, 59:19, 66:18
**cannot** [2] - 22:7, 25:23
**capability** [3] - 62:10, 63:10, 63:11
**Capital** [2] - 3:8, 3:10
**captured** [1] - 24:2
**capturing** [1] - 23:19
**car** [63] - 15:25, 16:1, 16:2, 16:4, 16:6, 16:13, 16:14, 16:16, 16:17, 16:18, 16:21, 16:23, 16:25, 17:1, 17:4, 17:5, 17:20, 17:22, 17:24, 34:3, 35:7, 36:5, 43:10, 44:24, 45:5, 45:10, 45:11, 45:12, 45:15, 45:19, 45:22, 45:23, 46:2, 46:6, 46:8, 46:9, 46:13, 46:21, 46:23, 46:24, 47:7, 47:18, 47:20, 47:25, 48:6, 48:8, 48:13, 48:15, 48:17, 48:18, 48:19, 48:22
**card** [1] - 57:7
**career** [1] - 50:25
**carries** [1] - 31:21
**cars** [16] - 35:1, 45:23, 46:1, 46:2, 46:12, 46:24, 47:2, 47:7, 47:10, 47:12, 47:17, 47:19, 47:22, 47:23, 48:1, 48:3
**case** [25] - 4:6, 4:9, 4:18, 4:23, 5:1, 5:24, 6:6, 6:20, 6:22, 8:13, 19:3, 22:4, 22:5, 32:8, 33:8, 51:7, 53:1, 53:15, 55:19, 61:6, 61:7, 61:12, 66:21, 68:5, 68:22
**Case** [2] - 3:8, 3:10
**CASE** [1] - 1:4
**cases** [4] - 4:8, 6:10, 14:11, 61:18
**cash** [1] - 36:6
**catch** [1] - 43:4
**caution** [3] - 39:1, 39:14, 43:16
**CDF** [3] - 10:20, 19:21, 64:2
**cell** [8] - 57:5, 57:13, 57:14, 58:7, 60:18, 64:1, 64:3
**Cellebrite** [1] - 62:13
**certain** [2] - 32:21, 34:3
**certainly** [4] - 31:25, 33:17, 34:1, 61:13
**CERTIFICATE** [1] - 70:1

**Certified** [1] - 70:6
**certify** [1] - 70:8
**chance** [2] - 35:14, 58:7
**characteristics** [1] - 54:23
**charged** [3] - 31:19, 31:20, 54:21
**charges** [10] - 17:13, 17:16, 33:14, 38:18, 53:3, 53:4, 54:16, 54:22, 55:19
**charging** [2] - 48:16, 48:21
**Charles** [1] - 1:15
**checkup** [1] - 37:9
**Chevy** [1] - 48:9
**Chief** [1] - 6:7
**children** [16] - 17:7, 17:11, 28:10, 36:25, 37:6, 37:7, 37:9, 37:23, 37:24, 42:9, 42:15, 42:23, 43:7, 43:12, 44:4, 44:7
**choose** [1] - 32:2
**chose** [1] - 16:5
**Circuit** [6] - 5:16, 5:17, 5:24, 6:6, 6:15, 6:21
**circumstance** [1] - 61:22
**circumstances** [3] - 33:19, 54:20, 60:5
**citation** [1] - 4:8
**claim** [4] - 17:15, 47:5, 50:5, 53:11
**claiming** [1] - 48:13
**claims** [1] - 45:6
**clarify** [1] - 64:10
**clear** [20] - 3:24, 4:4, 4:22, 6:14, 11:2, 11:6, 18:24, 19:24, 22:21, 26:9, 33:12, 34:1, 35:20, 45:21, 53:12, 54:14, 55:7, 55:19, 56:5, 64:23
**clearly** [8] - 35:25, 40:13, 44:17, 45:8, 45:11, 45:12, 46:9, 57:3
**clothes** [1] - 36:1
**Code** [1] - 53:9
**collar** [1] - 61:7
**colluding** [1] - 14:20
**collusion** [2] - 10:1, 10:17
**combination** [6] - 33:9, 53:6, 53:24, 55:5, 55:8, 56:1
**come** [4] - 26:2, 35:16, 52:6, 54:5
**coming** [2] - 39:19, 62:24
**command** [2] - 39:25, 43:18
**comments** [1] - 7:4
**commit** [1] - 10:14
**Committee** [1] - 3:11
**committee** [1] - 3:12
**communicate** [1] - 62:17
**community** [19] - 17:7, 28:2, 28:5, 33:10, 33:13, 49:23, 50:5, 51:24, 52:25, 53:8, 53:11, 53:21, 54:1, 54:7, 54:11, 54:15, 55:10, 55:11, 56:3
**companies** [1] - 51:2
**competent** [1] - 4:13
**completely** [1] - 38:14
**comply** [1] - 5:20
**components** [1] - 57:8
**Computer** [1] - 1:25
**computer** [6] - 57:8, 57:11, 58:10, 58:15, 63:11, 63:12
**Computer-Aided** [1] - 1:25
**computers** [2] - 57:9, 57:11
**conceal** [1] - 29:4
**concern** [2] - 13:20, 13:22
**concerns** [3] - 3:3, 13:18, 67:3
**conclude** [2] - 33:7, 55:3
**concluded** [1] - 69:20
**conclusions** [1] - 36:14
**concurring** [1] - 6:7
**condition** [4] - 53:6, 55:5, 55:8, 56:1
**conditions** [11] - 33:4, 33:9, 53:6, 53:18, 53:24, 54:6, 54:9, 55:5, 55:9, 56:1
**conduct** [6] - 4:13, 6:17, 6:19, 6:25, 31:23, 32:25
**conducted** [1] - 52:18
**conference** [4] - 3:7, 32:9, 68:6, 68:22
**CONFERENCE** [1] - 1:8
**Conference** [1] - 70:12
**confines** [1] - 62:17
**confirmed** [2] - 39:12, 42:25
**confiscated** [1] - 57:9
**conformance** [1] - 70:11
**confused** [1] - 34:19
**Congress** [1] - 52:22
**connected** [2] - 46:4
**connection** [2] - 25:1, 55:16
**consent** [9] - 9:9, 12:7, 14:16, 38:19, 57:1, 57:17, 59:7, 59:14, 59:22
**consented** [3] - 7:22, 8:5, 8:25
**consequences** [1] - 66:1
**consider** [14] - 14:22, 15:7, 17:16, 20:5, 22:1, 25:1, 29:19, 30:19, 33:19, 49:4, 54:12, 54:18, 54:22, 67:4
**considerations** [1] - 52:24
**considered** [1] - 24:3
**considering** [2] - 3:21, 54:24
**consistent** [1] - 59:9
**consulted** [1] - 52:13
**contact** [2] - 40:2, 43:21
**contacts** [1] - 22:5
**contain** [1] - 16:12
**contention** [2] - 29:10, 33:21
**context** [13] - 2:21, 20:21, 22:10, 22:22, 28:24, 29:1, 29:2, 31:8, 36:20, 40:5, 43:25, 53:5
**continue** [3] - 10:23, 26:25, 30:5
**continued** [2] - 20:19, 31:18
**continues** [1] - 32:23
**continuing** [1] - 3:25
**contract** [3] - 10:20, 13:16, 59:18
**contradict** [1] - 30:4
**conveniently** [1] - 43:7
**conversation** [3] - 29:2, 37:17, 42:8
**conviction** [1] - 57:25
**convincing** [4] - 33:12, 53:12, 54:14, 55:8
**coordinating** [1] - 65:9
**coordination** [1] - 13:13
**cop** [1] - 38:25
**copies** [4] - 58:16, 58:17, 65:17, 65:18
**copy** [6] - 19:19, 20:4, 20:9, 20:12, 24:14, 24:17
**corporate** [1] - 41:20
**correct** [4] - 3:17, 28:3, 62:1, 70:9
**correspondence** [1] - 61:9
**corrupted** [1] - 14:20
**corruption** [4] - 10:1, 12:22, 32:24, 57:20
**Corvin** [6] - 13:16, 56:25, 59:1, 59:18, 63:22, 69:5
**couldn't** [2] - 12:9, 24:20
**Coulson** [11] - 2:18, 4:18, 20:17, 29:24, 32:4, 34:7, 35:5, 36:11, 50:14, 52:15, 54:25
**Coulson's** [2] - 31:16, 36:14
**Counsel** [1] - 1:20
**counsel** [41] - 2:12, 2:14, 4:1, 4:5, 5:12, 6:12, 6:20, 7:2, 11:4, 13:6, 13:17, 14:16, 56:18, 56:22, 56:24, 59:2, 59:3, 59:6, 59:8, 60:6, 60:13, 60:16, 60:25, 61:18, 61:24, 62:8, 63:2, 63:3, 63:20, 63:21, 64:14, 64:15, 65:9, 65:16, 66:14, 66:24, 67:8, 68:1, 68:20, 69:2
**counsel's** [2] - 60:21, 61:20
**County** [10] - 20:10, 22:25, 35:22, 38:22, 39:6, 39:9, 39:13, 39:18, 39:21, 42:7
**couple** [3] - 2:16, 3:5, 3:23
**course** [3] - 5:10, 6:11, 29:22
**Court** [38] - 4:7, 4:9, 5:1, 5:2, 6:19, 6:22, 6:24, 7:12, 7:18, 8:23, 9:24, 10:2, 10:6, 10:10, 11:5, 12:4, 12:14, 12:17, 12:18, 13:6, 19:17, 20:24, 29:19, 31:16, 31:22, 32:13, 33:1, 33:5, 33:18, 36:12, 36:19, 48:4, 51:11, 54:10, 61:9, 61:11, 63:25, 70:7
**court** [20] - 7:8, 7:11, 8:18, 8:21, 10:7, 10:12, 14:10, 14:12, 22:7, 49:12, 49:18, 49:21, 50:19, 52:8, 53:20, 55:3, 65:17, 65:19, 66:6
**COURT** [126] - 1:1, 2:7, 2:9, 2:12, 2:15, 3:15, 3:18, 3:20, 8:7, 8:10, 8:13, 10:23, 11:2, 11:13, 11:16, 11:18, 13:25, 14:4, 14:21, 15:1, 15:4, 15:7, 16:9, 16:19, 17:2, 18:19, 19:2, 19:5, 19:11, 19:14, 19:23, 20:3, 21:4, 21:6, 21:9, 21:13, 21:15, 21:19, 21:22, 22:1, 22:14, 22:16, 22:20, 23:6, 23:10, 23:21, 23:25, 24:3, 24:10, 24:12, 24:16, 24:19, 24:22, 24:25, 25:6, 25:13, 25:21, 25:23, 26:4, 26:9, 26:17, 26:25, 27:10, 27:23, 28:3, 28:6, 28:14, 29:5, 29:7, 30:8, 30:12, 30:17, 31:5, 31:9, 34:22, 35:2, 35:13, 35:15, 36:16, 41:2, 41:7, 41:10, 49:3, 49:16, 50:2, 50:12, 52:2, 52:11, 56:9, 56:16, 58:19, 59:2, 59:6, 59:8, 60:1, 60:4, 61:21, 62:5, 62:18, 64:7, 64:14, 64:17, 64:20, 64:23, 65:23, 65:25, 66:7, 66:10, 66:13, 66:17, 66:20, 67:10, 67:14, 67:17, 67:22, 68:1, 68:5, 68:10, 68:16, 68:21, 69:3, 69:6, 69:11, 69:17, 69:19, 70:17
**Court's** [1] - 6:16
**courthouse** [8] - 60:8, 60:18, 61:4, 61:16, 62:24, 63:5, 63:7, 64:4

**Courtroom** [1] - 1:10
**courtroom** [9] - 5:4, 5:19, 6:9, 7:3, 11:4, 13:4, 21:22, 26:5, 50:18
**courts** [1] - 17:10
**covering** [2] - 10:5
**crazy** [2] - 40:21, 44:4
**creates** [1] - 53:17
**crime** [4] - 17:18, 30:4, 31:20
**Crimea** [7] - 23:2, 29:18, 37:3, 37:11, 37:12, 38:16, 40:15
**Crimea's** [8] - 46:17, 46:18, 46:19, 46:20, 46:24, 46:25, 47:2, 47:3
**criminal** [13] - 4:6, 4:10, 4:23, 5:3, 16:7, 17:12, 17:15, 18:1, 18:17, 39:20, 40:18, 50:4, 50:25
**cross** [1] - 67:16
**cross-examined** [1] - 67:16
**CRR** [1] - 70:17
**cul** [2] - 47:3, 47:18
**cul-de-sac** [2] - 47:3, 47:18
**custody** [1] - 62:3
**custom** [1] - 39:4
**customs** [1] - 43:17
**cut** [14] - 8:19, 8:22, 11:15, 11:17, 12:16, 13:2, 14:3, 14:6, 14:7, 23:8, 23:19, 30:16, 40:2
**cutting** [1] - 9:13

## D

**D** [5] - 2:1, 7:22, 8:1, 8:2, 12:6
**danger** [15] - 16:7, 17:7, 18:18, 28:2, 28:5, 33:13, 42:16, 49:23, 50:5, 51:24, 53:11, 54:11, 54:13, 55:11
**dangerous** [6] - 38:24, 39:2, 39:15, 42:12, 43:10, 43:16
**dangerousness** [1] - 52:25
**dark** [1] - 16:21
**darker** [1] - 34:3
**date** [4] - 23:2, 44:2, 68:10, 68:20
**Dated** [1] - 70:14
**dated** [1] - 7:21
**dates** [1] - 67:24
**DAVID** [2] - 1:5, 1:18
**David** [3] - 2:4, 2:11, 39:13
**day** [7] - 7:18, 9:1, 9:21, 10:4, 12:9, 69:19, 70:14
**days** [3] - 9:7, 9:17, 14:19
**DC** [1] - 3:8
**de** [6] - 31:23, 47:3, 47:18, 52:17, 52:18, 55:1
**dealings** [1] - 41:5
**death** [4] - 9:5, 31:21, 37:3, 49:11
**December** [2] - 9:10, 9:19
**decides** [1] - 23:17
**deciding** [1] - 49:5
**decision** [4] - 6:16, 52:23, 65:23, 65:25
**decision-making** [1] - 52:23
**declined** [1] - 65:19
**declining** [1] - 65:11
**defendant** [11] - 2:11, 2:22, 4:10, 4:23, 5:9, 6:9, 20:11, 54:10, 54:16, 60:8, 61:10
**Defendant** [1] - 1:6
**DEFENDANT** [105] - 1:17, 2:11, 7:7, 8:8, 8:12, 8:14, 10:25, 11:9, 11:14, 11:17, 11:23, 14:1, 14:5, 14:24, 15:2, 15:6, 15:9, 16:13, 16:20, 17:3, 19:3, 19:12, 19:16, 20:1, 21:2, 21:5, 21:7, 21:12, 21:14, 21:17, 21:20, 21:25, 22:3, 22:15, 23:5, 23:8, 23:17, 23:24, 24:1, 24:5, 24:9, 24:11, 24:14, 24:17, 24:21, 24:24, 25:2, 25:4, 25:16, 25:19, 25:25, 26:7, 27:4, 27:20, 28:1, 28:4, 28:7, 28:16, 28:23, 29:6, 30:5, 30:10, 30:14, 31:3, 31:7, 34:20, 34:24, 35:12, 35:14, 36:18, 41:3, 41:8, 41:12, 49:6, 49:20, 50:3, 50:16, 52:3, 56:4, 56:11, 56:21, 58:23, 59:4, 59:7, 59:12, 60:2, 62:24, 64:22, 65:14, 65:24, 66:3, 66:8, 66:11, 66:15, 66:18, 67:8, 67:11, 67:15, 68:7, 68:12, 68:18, 69:1, 69:4, 69:8, 69:18
**defendant's** [7] - 5:14, 6:2, 6:5, 6:11, 6:16, 20:23, 54:22
**defendants** [1] - 5:4
**defended** [1] - 18:3
**Defender** [1] - 1:22
**defense** [21] - 6:19, 6:25, 7:19, 11:12, 11:25, 12:5, 12:11, 13:6, 13:12, 13:17, 13:24, 14:14, 14:15, 53:17, 54:4, 57:17, 57:19, 58:25, 59:21, 65:15, 65:16
**definitely** [1] - 48:7
**definition** [1] - 53:3
**definitively** [1] - 36:4
**Delaware** [3] - 44:9, 50:19, 51:9
**delay** [1] - 5:22
**deliberate** [1] - 5:5
**deliberately** [1] - 5:9
**deliver** [3] - 38:6, 44:23
**delivering** [1] - 58:9
**demonstrating** [1] - 53:5
**denied** [1] - 67:18
**deny** [2] - 59:19, 67:15
**Department** [3] - 38:22, 39:13, 39:21
**department** [2] - 40:24, 56:15
**depending** [1] - 65:12
**depiction** [1] - 16:12
**depth** [2] - 4:15, 59:20
**description** [10] - 16:2, 16:18, 17:5, 17:20, 19:12, 43:11, 46:23, 47:7, 47:18, 47:19
**destroyed** [1] - 18:7
**detailed** [1] - 32:3
**detain** [1] - 53:2
**detained** [2] - 20:16, 53:2
**Detective** [3] - 20:9, 22:25, 23:1
**detectives** [1] - 34:9
**detention** [30] - 2:18, 2:21, 3:6, 3:21, 7:5, 11:21, 14:22, 14:25, 15:5, 15:9, 15:12, 20:23, 25:1, 30:22, 31:17, 31:18, 32:5, 32:15, 32:20, 32:23, 34:6, 36:14, 50:13, 52:14, 52:19, 53:5, 53:15, 53:16, 58:20, 68:16
**determination** [3] - 2:19, 3:15, 4:17
**determine** [1] - 4:19
**determining** [1] - 61:22
**development** [2] - 50:21, 51:1
**Diaz** [2] - 6:8
**did** [26] - 9:17, 10:2, 10:6, 11:11, 18:10, 18:13, 19:20, 21:20, 38:19, 39:3, 39:23, 40:14, 40:16, 42:18, 42:19, 44:4, 50:8, 51:14, 56:9, 56:10, 66:7, 66:9
**didn't** [24] - 9:7, 9:13, 9:20, 10:21, 12:10, 17:9, 18:15, 21:21, 22:11, 32:14, 39:10, 40:6, 40:7, 41:18, 42:6, 43:15, 48:24, 49:1, 50:3, 51:17, 52:3, 52:4
**difference** [1] - 64:2
**different** [4] - 30:16, 34:1, 45:3, 47:22
**dignity** [1] - 5:19
**direct** [2] - 66:14, 68:17
**directing** [3] - 15:4, 20:6, 31:9
**disbarred** [1] - 59:24
**discovery** [57] - 3:2, 12:2, 46:16, 49:14, 51:5, 51:6, 56:17, 56:18, 56:20, 56:25, 57:1, 57:11, 57:12, 57:16, 57:18, 58:1, 58:2, 58:4, 58:20, 58:23, 58:24, 59:5, 59:9, 59:13, 59:16, 59:20, 59:21, 60:3, 60:7, 60:12, 60:17, 60:24, 61:3, 61:15, 61:19, 62:4, 62:9, 62:11, 62:14, 62:25, 63:2, 63:8, 63:20, 63:22, 63:23, 64:5, 64:6, 65:2, 65:5, 66:21, 66:23, 66:25, 67:12, 68:21, 69:1, 69:5, 69:8
**discussion** [1] - 61:9
**disperse** [1] - 58:13
**disputed** [1] - 32:21
**disputing** [1] - 63:16
**disrupt** [2] - 7:14, 12:17
**disrupted** [1] - 12:22
**disrupting** [2] - 8:20, 15:3
**disruption** [4] - 5:5, 7:10, 8:15, 14:12
**disruptive** [2] - 6:9, 6:17
**distain** [1] - 32:12
**distance** [1] - 45:8
**distinct** [1] - 35:21
**distortion** [1] - 5:22
**distribute** [2] - 58:11, 58:13
**distributed** [4] - 57:18, 58:24, 59:4, 59:13
**distributing** [1] - 58:9
**District** [4] - 6:15, 6:19, 70:7
**DISTRICT** [3] - 1:1, 1:1, 1:9
**district** [2] - 2:22, 61:6
**DIVISION** [1] - 1:2
**do** [63] - 6:13, 7:7, 7:12, 10:8, 11:24, 12:2, 12:12, 12:16, 14:8, 15:15, 16:11, 18:11, 19:9, 19:19, 24:15, 24:18, 25:17, 26:1, 28:4, 29:1, 31:24, 32:2, 32:6, 36:13, 37:9, 38:5, 38:15, 38:16, 39:17, 40:15, 43:6, 44:9, 45:2, 49:12, 50:20, 54:2, 57:4, 58:9, 58:13, 60:10, 61:5, 63:3, 63:4, 63:9, 63:10, 63:13, 65:24, 66:6, 66:9, 66:11, 66:12, 66:13, 66:23, 69:7, 70:7
**docket** [5] - 7:20, 7:24, 9:15, 56:23
**doctored** [4] - 15:15, 23:9, 24:1, 24:2
**documentation** [1] - 15:18
**documented** [1] - 17:8
**dodging** [2] - 52:5, 52:9
**does** [11] - 16:1, 16:4, 16:16, 16:17, 17:5,

17:20, 18:22, 22:6, 28:4, 51:19, 53:22
**doing** [10] - 10:10, 13:7, 14:12, 36:22, 50:23, 50:24, 51:4, 59:17, 59:24
**done** [4] - 6:14, 8:5, 28:25, 61:17
**doors** [3] - 18:6, 18:8, 18:9
**dot** [7] - 46:7, 46:8, 46:10, 46:14, 46:15, 46:16, 46:20
**dots** [2] - 35:9
**doubt** [1] - 69:4
**down** [3] - 34:2, 50:22, 62:15
**dozen** [1] - 13:9
**Dr** [1] - 56:25
**drafting** [1] - 3:12
**drag** [1] - 52:7
**drive** [4] - 38:5, 38:8, 51:9, 62:12
**Drive** [1] - 51:9
**driver's** [1] - 39:17
**driving** [3] - 46:12, 48:15, 48:20
**dropped** [1] - 38:19
**drove** [1] - 45:2
**duck** [1] - 52:4
**ducking** [2] - 52:3, 52:9
**Ductan** [1] - 6:7
**DUCTAN** [1] - 6:7
**during** [4] - 9:14, 29:22, 32:14, 47:3

## E

**E** [9] - 1:11, 2:1, 48:12, 48:13, 48:16, 48:21
**E-ZPass** [5] - 48:12, 48:13, 48:16, 48:21
**earlier** [4] - 2:18, 4:17, 32:9, 33:22
**ECF** [7] - 16:11, 29:24, 31:17, 32:6, 32:11, 36:10, 36:11
**Edwards** [1] - 4:7
**efficiency** [2] - 6:1, 6:4
**either** [1] - 67:19
**El** [1] - 5:17
**electronic** [1] - 18:22
**elementary** [1] - 34:12
**eliciting** [1] - 29:15
**else** [11] - 35:4, 37:24, 48:11, 57:4, 57:21, 58:7, 63:23, 64:8, 69:11, 69:13, 69:17
**email** [4] - 11:10, 11:25, 59:15, 66:5
**employee** [1] - 10:11
**employees** [1] - 10:7
**employment** [1] - 32:18
**empty** [2] - 13:4, 13:14
**enacted** [1] - 52:22
**encounters** [1] - 39:20
**engaged** [1] - 6:17
**engages** [1] - 5:9
**enough** [1] - 18:12
**ensure** [1] - 33:10
**ensuring** [2] - 6:1, 6:3
**enter** [1] - 47:3
**entered** [7] - 8:3, 9:9, 9:16, 14:15, 14:16, 31:17, 50:14
**entire** [5] - 32:12, 37:21, 38:21, 45:20, 57:20
**entirety** [1] - 23:16
**entitled** [4] - 2:19, 2:24, 59:8, 70:10
**entrance** [1] - 46:3
**envisioning** [1] - 64:25
**escaping** [1] - 61:6
**especially** [3] - 12:22, 40:4, 56:14
**ESQUIRE** [2] - 1:13, 1:14
**Esquire** [2] - 1:21, 1:21
**essentially** [2] - 12:11, 32:12
**establish** [2] - 30:1, 32:11
**established** [1] - 33:11
**ethical** [1] - 59:11
**evade** [1] - 18:4
**evaluation** [2] - 10:19, 13:18
**even** [16] - 5:11, 14:10, 18:8, 39:19, 40:6, 40:8, 40:24, 43:15, 44:11, 46:4, 46:17, 46:19, 47:6, 48:24, 50:6, 54:2
**event** [1] - 5:14
**ever** [2] - 12:8, 12:9
**every** [14] - 18:2, 32:25, 33:2, 38:8, 38:9, 38:11, 38:25, 44:23, 44:24, 45:2, 50:19, 52:5, 53:1
**everyone** [3] - 8:15, 14:7, 69:19
**everything** [5] - 11:18, 49:24, 49:25, 51:20, 51:24
**everywhere** [1] - 38:11
**evidence** [52] - 15:12, 15:16, 18:7, 20:5, 22:7, 22:12, 22:13, 24:13, 24:20, 24:23, 24:25, 25:24, 26:6, 26:11, 26:13, 27:10, 29:17, 29:20, 29:25, 30:4, 30:20, 32:1, 32:22, 33:12, 33:15, 33:20, 36:9, 38:20, 45:1, 47:1, 49:18, 49:20, 49:22, 51:23, 53:13, 54:5, 54:8, 54:14, 54:18, 54:19, 54:21, 55:1, 55:5, 55:8, 55:12, 55:16, 55:21, 55:23, 56:13, 57:6, 65:19
**evidentiary** [1] - 27:11
**ex** [9] - 10:19, 10:21, 11:3, 11:7, 38:25, 40:7, 42:4, 43:14, 49:8
**exact** [2] - 36:1, 66:9
**examined** [1] - 67:16
**except** [2] - 37:24, 45:23
**exclusion** [1] - 29:3
**executed** [3] - 15:14, 15:19, 15:21
**Exhibit** [9] - 20:8, 20:9, 20:11, 22:24, 27:17, 28:11, 30:23, 32:5
**exhibits** [1] - 18:22
**expect** [5] - 4:14, 32:19, 33:3, 49:6, 49:9
**explain** [4] - 20:4, 23:11, 50:14, 52:20
**explained** [6] - 5:2, 5:16, 5:24, 6:8, 6:24, 36:3
**explaining** [1] - 52:20
**explains** [2] - 4:9, 20:7
**expressed** [1] - 3:3
**extensive** [1] - 15:18
**external** [1] - 62:11
**extra** [1] - 19:19

## F

**f)** [1] - 53:9
**f)(1)(B** [2] - 31:19, 53:17
**F.3d** [1] - 5:17
**F.App'x** [1] - 6:20
**facility** [1] - 58:21
**facing** [1] - 33:14
**fact** [10] - 8:21, 10:14, 34:5, 34:7, 44:3, 51:20, 52:9, 57:21, 58:1, 63:18
**factors** [4] - 29:19, 30:21, 54:13, 54:24
**facts** [1] - 53:11
**factual** [1] - 49:17
**fair** [1] - 12:21
**false** [8] - 15:11, 15:20, 19:17, 38:21, 52:6, 52:7, 52:8, 65:21
**familiar** [1] - 5:1
**family** [1] - 37:8
**far** [11] - 11:18, 16:21, 17:4, 41:20, 45:8, 57:15, 58:16, 60:11, 62:24, 63:24, 65:11
**farce** [1] - 17:20
**Faretta** [4] - 4:25, 5:15, 5:25, 6:24
**fast** [3] - 27:8, 28:21, 48:2
**father** [1] - 40:23
**favor** [1] - 32:20
**FBI** [4] - 1:23, 2:6, 20:13, 28:10
**FEDERAL** [1] - 70:17
**federal** [2] - 5:7, 59:1
**Federal** [2] - 1:22, 5:11
**few** [3] - 9:7, 37:2, 41:22
**fiduciary** [1] - 59:23
**fight** [1] - 51:7
**fighting** [1] - 37:23
**figure** [1] - 64:18
**file** [6] - 8:24, 12:1, 12:10, 14:23, 58:17, 65:6
**filed** [7] - 2:17, 3:22, 15:18, 17:10, 63:19, 65:17, 66:8
**filing** [7] - 3:1, 3:3, 16:10, 16:11, 18:20, 36:10
**final** [1] - 49:4
**finally** [1] - 6:22
**find** [9] - 13:21, 34:9, 40:24, 43:1, 54:2, 55:7, 57:4, 57:25, 60:10
**finding** [2] - 53:12, 55:11
**findings** [2] - 31:24, 32:7
**finds** [1] - 29:21
**fine** [3] - 11:12, 27:1, 64:4
**finish** [10] - 8:8, 10:25, 11:20, 11:23, 14:2, 21:5, 21:8, 21:18, 21:20, 21:21
**finished** [8] - 11:1, 11:14, 14:1, 15:3, 21:7, 21:8, 21:17, 26:6
**finishes** [1] - 25:8
**firearm** [4] - 56:5, 56:7, 56:8, 56:11
**firearms** [3] - 55:15, 56:12, 56:14
**first** [12] - 4:5, 9:3, 10:23, 22:23, 28:24, 29:4, 29:6, 44:21, 45:20, 50:14, 51:13, 65:15
**fishy** [1] - 47:13
**five** [6] - 35:15, 36:21, 41:10, 48:1, 51:21, 67:22
**flee** [2] - 55:19, 55:20
**flight** [14] - 17:6, 17:25, 18:16, 18:17, 21:3, 28:1, 28:5, 33:15, 49:22, 50:6, 51:24, 52:24, 55:18, 55:24
**Floor** [1] - 1:15
**Florida** [24] - 22:11, 22:15, 29:23, 30:2, 35:23, 35:24, 37:21, 38:4, 38:6, 38:12, 39:10, 39:17, 39:18, 40:10, 41:17, 41:18, 41:19, 43:24, 44:21, 44:25, 45:2, 45:7, 45:9
**folks** [15] - 7:23, 8:4, 8:23, 11:11, 11:24, 12:19, 13:5, 13:10, 13:19, 13:22, 41:4, 57:15, 57:19, 58:10, 58:25
**follow** [3] - 36:24, 62:1, 65:4
**follow-up** [1] - 36:24
**followed** [1] - 60:11
**following** [6] - 3:24, 4:3, 4:22, 5:3, 58:22, 60:5
**footage** [3] - 23:11, 23:23, 48:12
**footnote** [2] - 5:3, 20:7
**footnotes** [1] - 20:7
**FOR** [1] - 1:1
**foregoing** [1] - 70:8

**forfeit** [1] - 6:9
**forged** [1] - 19:17
**forget** [1] - 39:10
**forgoes** [1] - 7:1
**form** [1] - 54:9
**format** [1] - 70:11
**forth** [1] - 63:25
**forward** [6] - 27:8, 28:12, 28:21, 48:2, 54:5, 67:4
**forwarded** [1] - 3:13
**found** [2] - 55:15, 56:6
**four** [7] - 41:10, 46:1, 47:2, 47:11, 47:17, 47:21, 48:1
**Fourth** [9] - 5:16, 5:17, 5:24, 6:6, 6:15, 6:21, 15:17, 15:22, 17:19
**frame** [1] - 37:16
**framed** [2] - 8:20, 12:17
**frames** [3] - 37:20, 44:20, 63:15
**fraud** [1] - 61:6
**fraudulent** [1] - 32:24
**Frazier** [1] - 5:17
**Frazier-El** [1] - 5:17
**Frederick** [2] - 20:10, 22:25
**free** [1] - 52:1
**Friday** [3] - 1:9, 10:18, 36:2
**front** [5] - 19:21, 33:1, 34:6, 52:14, 63:12
**frustration** [1] - 13:2
**fuck** [1] - 42:20
**fucking** [1] - 43:5
**full** [5] - 2:24, 2:25, 32:2, 33:18, 52:14
**full-blown** [1] - 2:24
**further** [3] - 32:23, 33:17, 66:22

## G

**G** [1] - 2:1
**gas** [2] - 36:1, 36:5
**gave** [2] - 51:15, 59:14
**General** [1] - 3:14
**generally** [1] - 23:25
**George** [4] - 59:1, 59:18, 63:22, 69:5
**George's** [8] - 38:22, 39:6, 39:8, 39:13, 39:18, 39:21, 42:6
**Georgia** [1] - 35:22
**getting** [1] - 34:19
**girl** [3] - 42:25, 43:1, 43:2
**give** [11] - 13:18, 27:4, 36:21, 40:5, 51:17, 57:10, 57:11, 58:3, 58:15, 62:20
**given** [5] - 18:12, 33:13, 50:17, 55:19, 60:19
**giving** [2] - 38:2, 58:1
**Glenwood** [1] - 51:8
**Glover** [1] - 6:20
**gone** [4] - 38:5, 38:12, 49:21, 58:14
**good** [7] - 2:3, 2:7, 2:8, 2:9, 2:13, 2:15, 69:19
**gotten** [2] - 39:8, 65:22
**Government** [56] - 2:6, 2:23, 3:3, 5:11, 19:24, 20:4, 20:8, 20:11, 20:14, 20:17, 20:20, 21:16, 22:17, 22:24, 24:4, 24:12, 25:10, 26:13, 27:17, 29:8, 29:16, 29:20, 29:21, 29:23, 29:25, 30:1, 31:12, 32:5, 32:13, 33:11, 33:23, 34:7, 41:21, 52:13, 52:16, 53:1, 53:4, 53:10, 53:14, 53:16, 53:23, 55:4, 55:7, 55:25, 58:22, 59:1, 60:15, 61:14, 62:20, 64:8, 64:10, 65:1, 67:25, 69:12
**Government's** [22] - 6:1, 6:3, 16:10, 19:6, 19:20, 21:10, 24:23, 26:11, 27:23, 28:11, 30:18, 30:23, 32:22, 60:9, 60:15, 61:1, 61:17, 64:24, 65:13, 67:1, 67:2, 69:13
**grant** [4] - 9:17, 13:8, 14:18, 14:19
**granted** [6] - 9:18, 9:21, 10:4, 10:15, 12:8, 13:7
**granting** [1] - 9:25
**grenades** [1] - 18:6
**grip** [1] - 44:12
**Gruber** [2] - 61:7, 61:8
**guard** [5] - 37:7, 37:25, 43:13, 44:5
**guess** [3] - 15:14, 18:22, 47:16
**guilt** [1] - 22:8
**guilty** [3] - 17:14, 17:17, 50:4
**gun** [3] - 37:8, 43:10, 44:13
**guy** [1] - 49:15
**guys** [1] - 57:23

## H

**HAGAN** [40] - 1:13, 2:3, 2:8, 3:10, 3:17, 3:19, 19:1, 19:9, 19:19, 20:6, 22:19, 22:23, 23:13, 25:3, 25:15, 26:15, 26:21, 27:2, 27:8, 27:13, 27:15, 27:22, 28:8, 28:15, 28:18, 28:21, 29:13, 30:23, 31:1, 31:15, 35:5, 35:18, 60:20, 62:1, 64:9, 64:15, 64:19, 67:21, 67:24, 69:16
**Hagan** [18] - 2:5, 3:7, 18:20, 19:8, 19:23, 19:25, 20:3, 23:10, 26:14, 26:17, 28:6, 29:12, 31:14, 35:4, 35:13, 35:17, 49:17, 60:4
**Hagan's** [1] - 19:14
**hallway** [2] - 13:4, 13:13
**Hamilton** [1] - 51:3
**hand** [2] - 7:20, 42:22
**hanging** [1] - 34:5
**happened** [8] - 24:6, 38:16, 39:22, 41:9, 41:15, 44:8, 49:7, 50:8
**happy** [3] - 11:21, 33:17, 36:13
**harassed** [1] - 40:14
**harassing** [1] - 43:22
**hard** [1] - 62:11
**harm** [1] - 17:9
**hasn't** [3] - 32:22, 33:6, 51:12
**hat** [1] - 34:5
**having** [2] - 13:14, 64:11
**Hazlehurst** [4] - 7:22, 8:1, 8:2, 12:6
**he's** [13] - 20:19, 28:16, 32:25, 33:2, 33:14, 35:22, 36:1, 36:6, 38:1, 42:20, 43:16, 55:22, 62:4
**heading** [1] - 35:22
**headlights** [1] - 35:9
**health** [2] - 13:21, 13:23
**hear** [22] - 7:6, 11:20, 11:21, 18:25, 20:25, 23:5, 24:15, 24:18, 24:20, 25:6, 25:7, 25:11, 26:19, 28:17, 29:7, 29:8, 29:9, 29:10, 31:13, 32:19, 62:6, 64:24
**heard** [5] - 23:16, 31:11, 52:12, 52:15
**hearing** [40] - 2:24, 2:25, 9:10, 10:13, 10:22, 11:5, 12:21, 13:14, 15:9, 15:12, 15:23, 20:16, 22:22, 26:12, 26:13, 29:1, 29:16, 31:10, 31:11, 31:23, 32:2, 32:5, 33:18, 34:6, 35:5, 42:5, 50:19, 51:13, 51:14, 52:14, 52:16, 53:5, 56:16, 63:15, 67:6, 67:12, 68:8, 68:24
**hearings** [3] - 18:3, 32:8, 32:9
**held** [7] - 6:24, 37:7, 37:25, 57:18, 58:20, 68:24, 70:10
**help** [1] - 5:13
**helpful** [1] - 19:2
**hereby** [1] - 70:7
**hesitation** [3] - 37:13, 38:13, 40:20
**hey** [2] - 10:11, 40:13
**hid** [1] - 42:22
**hiding** [1] - 49:2
**highlight** [1] - 36:8
**highlighted** [1] - 34:3
**himself** [3] - 20:25, 61:15, 64:12
**history** [8] - 17:12, 18:17, 25:25, 26:1, 39:20, 40:13, 50:4, 54:22
**hit** [3] - 36:4, 48:18, 48:23
**hits** [1] - 56:15
**holding** [1] - 55:21
**home** [4] - 18:5, 18:6, 18:8, 37:10
**Honor** [41] - 2:3, 2:13, 3:11, 19:1, 19:9, 19:19, 20:6, 20:14, 20:22, 20:25, 22:23, 23:14, 26:22, 27:8, 27:15, 28:8, 28:13, 28:15, 28:18, 28:21, 29:13, 29:24, 30:24, 31:1, 31:15, 31:22, 32:1, 32:6, 32:10, 33:3, 33:7, 33:17, 33:24, 35:6, 35:18, 36:8, 56:4, 64:9, 67:21, 68:2
**HONORABLE** [1] - 1:8
**hour** [1] - 51:9
**hours** [4] - 9:18, 14:18, 47:5, 47:21
**house** [4] - 37:25, 44:9, 45:7, 46:18
**however** [2] - 23:15, 54:3
**huh** [1] - 25:5
**husband** [3] - 44:8, 44:12, 44:13

## I

**ignore** [1] - 51:25
**ill** [1] - 42:10
**illegal** [10] - 7:19, 9:12, 10:13, 13:2, 18:5, 29:3, 36:21, 44:4, 51:19, 56:23
**illegality** [1] - 32:24
**illegally** [4] - 15:14, 15:19, 15:21
**illness** [1] - 4:12
**imagine** [2] - 40:22, 40:23
**important** [5] - 9:23, 44:2, 44:3, 68:13, 68:19
**imposed** [1] - 33:4
**impossible** [1] - 6:18
**incentive** [1] - 55:19
**inch** [2] - 16:22
**include** [1] - 32:7
**included** [1] - 36:10
**including** [2] - 54:13, 55:12
**inconsistent** [1] - 35:23
**independent** [3] - 4:19, 31:24, 32:6
**Indiana** [1] - 4:7
**indicated** [2] - 31:22, 33:24
**information** [9] - 27:5, 36:12, 37:6, 37:14, 42:22, 51:16, 51:17, 54:25, 62:8
**informing** [1] - 12:18
**initial** [3] - 9:1, 15:9, 36:24
**initiated** [1] - 28:9
**innocence** [1] - 54:18
**innocent** [6] - 17:14, 17:16, 50:4, 53:3, 53:4, 54:16

**inquired** [1] - 61:7
**inquiry** [1] - 36:24
**insistence** [1] - 4:5
**instance** [2] - 10:8, 61:5
**instances** [3] - 8:20, 36:21, 63:12
**instead** [1] - 4:1
**integrity** [2] - 6:1, 6:4
**intelligently** [1] - 7:1
**intends** [2] - 33:23, 40:1
**intention** [1] - 41:25
**interaction** [1] - 11:7
**interest** [3] - 6:1, 6:3, 6:5
**interested** [1] - 44:18
**interior** [1] - 18:8
**internet** [5] - 42:12, 43:8, 43:11, 50:23, 62:15
**interpreted** [1] - 14:11
**interrupted** [5] - 7:9, 14:11, 24:19, 24:22, 25:14
**interruption** [2] - 45:15, 45:16
**introduce** [3] - 2:10, 28:12, 33:24
**introduced** [2] - 20:14, 32:9
**introducing** [1] - 32:10
**invalid** [1] - 17:15
**invalidated** [1] - 57:24
**investigating** [1] - 36:25
**invite** [1] - 48:5
**invoke** [2] - 4:2, 21:23
**involve** [1] - 51:19
**involved** [1] - 11:5
**involves** [1] - 29:2
**irrelevant** [3] - 25:20, 26:8, 38:15
**Israel** [1] - 39:4
**issue** [8] - 14:22, 14:25, 15:5, 15:8, 62:25, 63:4, 67:3, 67:11
**issues** [2] - 32:23, 68:23
**items** [3] - 2:16, 15:13, 57:8

## J

**jail** [2] - 58:10, 58:14
**JAMES** [1] - 1:14
**Jamie** [1] - 2:5
**Jeff** [1] - 1:23
**Jeffrey** [2] - 2:5, 27:19
**Jersey** [1] - 40:9
**job** [1] - 51:1
**Judge** [15] - 2:18, 4:18, 6:8, 20:17, 29:23, 31:16, 32:3, 34:7, 35:5, 36:11, 36:14, 50:14, 52:14, 54:25
**JUDGE** [1] - 1:9
**judge** [3] - 2:22, 5:8
**Judicial** [1] - 70:12
**jury** [2] - 57:23, 59:22
**justice** [1] - 10:17

## K

**keep** [2] - 58:6, 69:8
**keeping** [1] - 51:5
**kidnapped** [3] - 17:7, 28:11, 42:9
**kidnapping** [2] - 36:25, 37:6
**kids** [5] - 37:14, 42:13, 42:20, 44:10, 44:11
**kill** [8] - 40:3, 41:1, 42:13, 43:5, 43:18, 43:20, 49:10
**killed** [4] - 42:3, 42:21, 43:13, 47:14
**Kim** [1] - 2:5
**KIM** [1] - 1:13
**kind** [1] - 57:24
**knew** [3] - 9:22, 10:19, 59:16
**know** [45] - 3:2, 4:25, 7:11, 9:4, 12:24, 13:5, 13:23, 16:3, 17:6, 19:18, 27:5, 34:25, 39:3, 39:7, 39:15, 39:16, 39:22, 39:23, 40:6, 40:8, 42:3, 42:5, 42:10, 42:18, 42:24, 43:3, 43:21, 44:1, 44:5, 44:7, 45:24, 46:14, 47:6, 48:11, 48:24, 49:14, 50:10, 57:20, 57:21, 58:1, 60:5, 61:12, 63:23
**knowing** [1] - 42:2
**knowingly** [1] - 7:1
**knowledge** [4] - 38:22, 41:1, 49:8, 56:8
**knows** [5] - 46:22, 47:13, 48:23, 48:25, 49:1

## L

**lady** [2] - 40:13, 41:8
**Lange** [1] - 29:18
**laptop** [13] - 60:7, 60:25, 61:3, 61:8, 61:11, 61:15, 61:20, 62:2, 62:11, 62:12, 62:17, 64:16, 65:2
**last** [1] - 3:7
**later** [8] - 9:18, 26:21, 41:22, 42:24, 44:1, 47:6, 62:16, 63:4
**law** [16] - 5:7, 5:20, 10:1, 10:11, 12:4, 12:5, 12:12, 12:18, 12:20, 12:25, 14:15, 14:17, 15:13, 22:4, 22:5, 57:16
**lawful** [2] - 8:6, 14:13
**lawfully** [1] - 17:11
**lawyer** [1] - 6:5
**least** [3] - 33:14, 35:15, 54:5
**leave** [3] - 18:13, 47:3, 52:4
**leaves** [1] - 35:8
**left** [4] - 26:3, 36:2, 40:11, 47:21
**legal** [2] - 50:15, 52:21
**less** [1] - 9:18
**let's** [2] - 11:13, 25:17
**lets** [1] - 12:24
**letting** [1] - 49:13
**license** [12] - 5:18, 5:19, 35:21, 36:3, 36:4, 39:17, 48:18, 48:20, 48:23, 48:24, 48:25, 55:14
**lie** [8] - 34:20, 34:24, 47:11, 48:4, 49:13, 49:25, 51:13, 51:25
**lies** [5] - 45:22, 46:9, 50:9, 50:10, 51:22
**life** [5] - 9:2, 31:21, 42:16, 43:3
**light** [1] - 3:24
**likewise** [1] - 68:2
**limits** [1] - 54:17
**line** [5] - 7:24, 7:25, 8:2, 29:6
**lines** [1] - 9:16
**listen** [2] - 14:7, 30:15
**listened** [3] - 8:8, 8:21, 27:21
**litigation** [1] - 51:19
**little** [3] - 26:21, 27:9, 68:4
**live** [11] - 38:4, 39:9, 39:10, 39:17, 39:18, 40:24, 41:16, 42:2, 42:6, 43:15, 43:24
**lived** [1] - 40:9
**lives** [1] - 50:18
**living** [4] - 32:17, 40:8, 41:17
**loaded** [1] - 62:11
**locked** [2] - 57:12, 62:15
**locks** [1] - 18:9
**lockup** [1] - 64:13
**logistics** [2] - 62:7, 64:18
**longer** [1] - 55:22
**look** [33] - 7:24, 7:25, 8:2, 14:3, 16:4, 16:15, 16:22, 16:23, 16:25, 34:4, 34:15, 37:3, 37:21, 39:15, 39:22, 42:4, 42:12, 43:8, 43:9, 45:1, 45:4, 45:11, 45:18, 46:11, 47:15, 47:24, 57:12, 57:14, 61:4, 61:13, 64:7, 66:6
**looked** [8] - 9:14, 16:1, 16:13, 16:14, 45:22, 45:23, 46:1, 46:15
**looking** [3] - 37:19, 67:6, 67:19
**looks** [5] - 16:6, 16:16, 17:3, 17:4, 45:10
**lose** [3] - 4:10, 4:15, 4:23
**lying** [4] - 48:4, 48:7, 51:19, 51:20

## M

**M** [2] - 70:5, 70:17
**made** [14] - 3:15, 4:18, 20:18, 21:13, 21:22, 23:13, 26:9, 30:16, 36:24, 49:4, 49:17, 52:6, 55:22, 60:8
**magistrate** [1] - 2:22
**mail** [2] - 9:21, 19:20
**mailroom** [1] - 10:20
**Main** [1] - 34:11
**main** [2] - 11:16, 52:23
**making** [9] - 28:17, 34:17, 36:6, 52:23, 60:9, 65:7, 65:18, 65:23, 65:25
**man** [2] - 12:11, 50:11
**management** [2] - 68:6, 68:22
**manipulation** [1] - 5:22
**manner** [1] - 31:11
**many** [9] - 5:3, 11:24, 13:9, 22:4, 41:4, 47:2, 47:19, 51:2, 51:3
**map** [2] - 46:15, 46:16
**March** [1] - 1:9
**Market** [3] - 30:2, 34:10, 34:12
**marshals** [6] - 13:13, 60:24, 61:14, 62:3, 64:13, 68:17
**MARYLAND** [1] - 1:1
**Maryland** [30] - 1:10, 1:15, 18:1, 26:1, 26:2, 26:3, 30:2, 32:12, 33:6, 33:7, 34:10, 35:20, 36:7, 38:14, 38:17, 38:18, 40:1, 40:4, 40:8, 40:11, 40:14, 41:16, 41:25, 42:6, 43:15, 45:6, 45:25, 48:14, 48:15, 70:7
**match** [9] - 16:2, 16:17, 17:5, 17:20, 46:23, 47:18, 47:19, 56:9, 56:10
**matched** [2] - 47:7, 56:6
**material** [1] - 65:10
**materials** [3] - 62:16, 63:4, 64:12
**matter** [4] - 4:20, 12:25, 55:1, 70:10
**maximum** [1] - 31:21
**McKaskle** [1] - 6:23
**MCKASKLE** [1] - 6:23
**means** [5] - 4:17, 37:8, 42:13, 54:4, 55:20
**meant** [1] - 5:21
**Mechanical** [1] - 1:25
**meet** [2] - 56:21, 57:2
**meeting** [3] - 3:8, 3:10, 13:15
**memo** [3] - 18:21, 19:6, 19:24
**memorandum** [4] - 3:12, 19:20, 20:15, 20:22
**mental** [3] - 4:12, 13:20, 13:23
**mentally** [1] - 42:10
**mention** [3] - 9:11, 38:8, 38:10
**mentioned** [3] - 20:18, 33:22, 49:24
**merit** [1] - 57:24
**Merit** [1] - 70:5
**message** [1] - 43:1

**met** [3] - 8:4, 8:24, 65:15
**Miami** [2] - 45:7, 45:9
**miles** [2] - 38:9, 44:24
**millimeter** [1] - 56:8
**mind** [1] - 69:4
**minding** [1] - 40:23
**mine** [2] - 43:17, 45:6
**minute** [1] - 62:6
**minutes** [5] - 27:16, 28:22, 29:10, 31:1, 48:2
**misconduct** [8] - 5:10, 10:9, 12:15, 12:16, 29:3, 56:22, 59:24
**misinterpreted** [1] - 7:10
**missed** [1] - 25:13
**modification** [1] - 65:6
**modifies** [1] - 54:17
**moment** [3] - 8:13, 26:12, 69:12
**Monday** [1] - 3:11
**money** [3] - 18:13, 41:21, 50:24
**month** [2] - 37:23, 50:7
**months** [6] - 11:25, 13:9, 13:19, 40:9, 41:22, 58:5
**moreover** [1] - 5:8
**morning** [10] - 2:3, 2:7, 2:8, 2:9, 2:13, 2:15, 34:18, 47:10, 47:14, 47:15
**mother** [5] - 42:10, 42:11, 43:13, 50:18, 51:13
**mother's** [4] - 42:11, 42:16, 43:8, 43:10
**motion** [19] - 9:11, 9:16, 9:17, 9:18, 9:20, 9:22, 9:23, 9:24, 9:25, 10:4, 12:8, 12:10, 13:10, 14:18, 30:6, 56:7, 65:6, 67:12
**motions** [11] - 3:22, 13:8, 14:19, 58:17, 63:19, 65:3, 65:10, 65:17, 66:8, 67:5
**move** [7] - 15:1, 15:4, 27:17, 28:12, 64:4, 65:15, 67:9
**moved** [3] - 14:24, 40:10, 53:16
**movement** [1] - 35:19
**movements** [2] - 30:1, 34:11
**Mr** [99] - 2:9, 2:10, 2:17, 2:18, 3:3, 3:25, 4:3, 4:25, 6:15, 7:5, 10:24, 16:9, 18:19, 18:24, 19:14, 19:20, 19:23, 20:3, 20:6, 20:13, 20:16, 20:18, 20:25, 21:4, 21:24, 22:14, 22:16, 23:1, 23:2, 23:21, 24:16, 24:19, 24:22, 25:6, 25:7, 25:14, 25:23, 26:4, 26:9, 26:22, 27:18, 28:9, 29:9, 29:15, 29:17, 29:21, 30:1, 30:4, 30:17, 31:5, 31:9, 31:17, 31:19, 32:11, 32:21, 33:21, 34:4, 34:22, 35:2, 35:6, 35:13, 35:16, 35:21, 36:9, 36:17, 36:23, 37:1, 37:10, 44:15, 49:16, 50:12, 52:12, 52:15, 53:3, 54:8, 55:6, 55:20, 56:2, 56:17, 58:20, 60:12, 60:17, 60:22, 60:24, 61:7, 61:15, 62:4, 62:6, 62:19, 62:22, 64:11, 64:25, 65:23, 68:10, 69:6, 69:12, 69:17
**MR** [3] - 2:13, 62:10, 68:2
**Ms** [20] - 3:7, 18:20, 19:8, 19:14, 19:23, 19:25, 20:3, 23:10, 26:14, 26:17, 28:6, 29:12, 31:14, 34:12, 34:17, 35:4, 35:13, 35:17, 49:17, 60:4
**MS** [39] - 2:3, 2:8, 3:10, 3:17, 3:19, 19:1, 19:9, 19:19, 20:6, 22:19, 22:23, 23:13, 25:3, 25:15, 26:15, 26:21, 27:2, 27:8, 27:13, 27:15, 27:22, 28:8, 28:15, 28:18, 28:21, 29:13, 30:23, 31:1, 31:15, 35:5, 35:18, 60:20, 62:1, 64:9, 64:15, 64:19, 67:21, 67:24, 69:16
**much** [3] - 17:21, 57:24, 63:22
**multiple** [5] - 11:10, 11:11, 11:19, 22:4, 60:23
**murder** [5] - 23:2, 29:22, 37:22, 41:6, 41:24
**murdered** [6] - 47:4, 47:5, 47:13, 47:20, 47:21, 49:9
**murders** [1] - 29:18
**must** [2] - 53:11, 54:22
**myself** [10] - 18:3, 50:24, 57:5, 58:7, 63:6, 64:1, 64:3, 64:4, 68:14

## N

**N** [2] - 1:11, 2:1
**Nadine** [1] - 70:5
**NADINE** [1] - 70:17
**name** [3] - 13:15, 26:23, 61:5
**nation** [1] - 39:1
**nature** [4] - 33:13, 33:19, 54:13, 54:20
**nearby** [1] - 46:3
**necessarily** [4] - 2:23, 8:16, 65:2
**necessary** [2] - 5:15, 62:12
**need** [23] - 25:20, 39:6, 39:7, 39:9, 42:7, 49:9, 50:11, 60:13, 61:4, 61:13, 62:1, 63:3, 63:9, 63:10, 63:13, 63:16, 63:23, 64:24, 65:10, 66:16, 66:21, 68:18
**needed** [1] - 38:23
**needs** [2] - 7:8, 7:14
**neighborhood** [10] - 34:12, 34:17, 35:8, 46:3, 46:5, 46:17, 46:18, 46:19, 46:20, 46:25
**neither** [1] - 5:19
**never** [12] - 7:22, 8:4, 8:24, 9:12, 9:22, 9:24, 9:25, 39:8, 39:20, 43:1, 50:25, 58:12
**New** [4] - 30:2, 34:10, 34:12, 40:9
**Newark** [2] - 50:18, 51:9
**next** [4] - 41:11, 56:16, 67:6, 68:5
**nobody** [9] - 10:3, 10:15, 47:5, 47:13, 47:14, 47:15, 52:3, 52:4, 52:8
**none** [1] - 47:7
**north** [1] - 30:2
**NORTHERN** [1] - 1:2
**note** [7] - 6:22, 12:16, 13:1, 14:14, 16:6, 18:20, 28:17
**noted** [3] - 21:6, 21:9, 56:22
**notes** [2] - 15:19, 62:16
**nothing** [16] - 10:19, 13:5, 16:25, 26:1, 27:5, 29:1, 33:7, 38:15, 38:16, 40:15, 42:25, 44:2, 45:3, 45:16, 45:19, 54:17
**notice** [1] - 10:21
**notices** [1] - 41:22
**notifies** [1] - 23:1
**noting** [1] - 12:15
**notion** [1] - 40:1
**novo** [4] - 31:23, 52:17, 52:18, 55:1
**number** [3] - 3:22, 48:13, 54:12
**Number** [1] - 27:17
**NUMBER** [1] - 1:4

## O

**O** [1] - 2:1
**o'clock** [1] - 47:10
**O'DONOHUE** [1] - 1:14
**O'Donohue** [1] - 2:5
**object** [10] - 14:8, 19:4, 19:18, 21:2, 21:12, 21:14, 34:20, 45:17, 61:25, 69:7
**objecting** [1] - 24:6
**objection** [18] - 5:11, 21:4, 21:6, 21:8, 21:9, 21:13, 21:15, 21:17, 21:18, 21:19, 21:22, 21:24, 22:17, 24:3, 30:10, 62:21, 68:10
**objections** [2] - 14:11, 63:6
**obligation** [2] - 4:19, 68:21
**obligations** [2] - 59:10, 59:11
**obstructionist** [2] - 5:10, 6:18
**occurred** [1] - 5:8
**OF** [6] - 1:1, 1:3, 1:8, 1:12, 1:14, 70:1
**offense** [2] - 33:19, 54:20
**offer** [3] - 26:10, 49:24, 63:3
**offered** [2] - 33:6, 51:23
**offering** [1] - 65:12
**offers** [1] - 50:17
**Office** [4] - 1:22, 20:10, 22:25, 62:2
**OFFICE** [1] - 1:14
**officer** [3] - 22:5, 39:4, 39:24
**officer's** [1] - 43:17
**officers** [2] - 18:14, 43:14
**OFFICIAL** [2] - 70:1, 70:17
**often** [2] - 23:12, 54:8
**oh** [2] - 40:12, 42:24
**old** [1] - 48:16
**ON** [1] - 1:12
**one** [33] - 2:17, 4:8, 4:10, 4:15, 7:18, 11:16, 12:3, 14:3, 14:9, 15:11, 15:20, 16:20, 16:22, 17:18, 18:2, 29:18, 33:21, 34:4, 37:2, 37:22, 38:15, 41:11, 44:6, 46:15, 46:19, 48:6, 48:8, 48:19, 57:10, 60:25, 61:5, 62:21, 63:19
**ones** [1] - 9:5
**ongoing** [1] - 4:20
**open** [2] - 18:6, 18:9
**operate** [1] - 7:8
**opinion** [1] - 6:7
**opportunity** [13] - 18:24, 19:6, 21:10, 26:5, 26:10, 27:24, 30:12, 30:18, 30:19, 31:5, 31:12, 50:7, 56:20
**opposite** [1] - 66:9
**option** [4] - 60:10, 61:2, 61:13, 65:12
**options** [1] - 61:1
**Order** [1] - 39:14
**order** [27] - 2:18, 2:21, 9:25, 10:21, 11:21, 20:23, 31:16, 31:17, 32:15, 36:15, 38:23, 38:25, 40:7, 40:9, 40:10, 40:16, 40:18, 40:25, 43:14, 49:8, 50:14, 52:19, 57:6, 57:7, 62:20, 66:20
**ordering** [3] - 31:9, 35:2, 65:7
**orderly** [1] - 31:11
**original** [7] - 20:16,

25:2, 25:3, 25:4, 29:16, 32:4, 36:10
**originally** [1] - 60:20
**others** [2] - 34:3, 34:4
**otherwise** [1] - 36:13
**our** [8] - 5:6, 20:15, 29:24, 33:11, 36:10, 36:13, 60:23
**out-of-context** [1] - 29:2
**outline** [1] - 36:9
**outlined** [3] - 29:17, 29:23, 61:2
**outside** [4] - 35:20, 44:11, 45:7, 62:17
**outstanding** [1] - 68:23
**outweighs** [2] - 6:2, 6:4
**over** [11] - 5:11, 8:19, 8:20, 13:9, 20:3, 42:20, 42:23, 44:7, 50:7, 52:8, 68:17
**overruled** [4] - 21:15, 22:17, 24:4, 67:18
**owe** [2] - 41:18, 41:21
**own** [3] - 6:5, 6:25, 61:3
**owner** [1] - 41:18

## P

**P** [3] - 1:11, 2:1
**p.m** [2] - 68:6, 68:25
**packages** [2] - 38:6, 44:23
**packet** [2] - 9:20, 9:24
**page** [4] - 45:6, 45:9, 45:18, 70:11
**pages** [1] - 20:1
**paid** [1] - 41:19
**paint** [1] - 8:15
**paperwork** [4] - 17:11, 44:6, 48:25, 65:20
**parked** [2] - 34:13, 46:13
**parks** [1] - 46:6
**part** [12] - 13:12, 15:14, 20:15, 25:14, 27:9, 29:19, 30:7, 36:25, 57:17, 57:19, 58:25, 59:21
**parte** [9] - 10:19, 10:22, 11:3, 11:7, 38:25, 40:7, 42:5, 43:14, 49:8
**partiality** [1] - 10:16
**participating** [2] - 11:12, 11:24
**particularly** [1] - 3:24
**parts** [1] - 34:3
**pass** [1] - 48:3
**passed** [1] - 35:1
**passport** [6] - 18:11, 18:12, 50:1, 50:6, 55:21, 55:22
**password** [1] - 58:6
**past** [1] - 34:12
**patrol** [1] - 38:25
**Paul** [4] - 7:22, 8:1, 8:2, 12:6
**pause** [5] - 23:10, 24:9, 25:19, 25:20, 26:17
**pay** [1] - 41:20
**paying** [2] - 41:20, 44:22
**penalty** [2] - 9:5, 31:21
**people** [18] - 12:5, 38:6, 40:3, 40:20, 41:14, 41:20, 41:23, 41:24, 42:3, 43:20, 43:22, 44:9, 48:19, 57:17, 58:2, 59:21, 63:12, 69:9
**percent** [1] - 65:22
**perhaps** [2] - 62:16, 64:15
**period** [11] - 23:6, 23:12, 23:14, 28:18, 42:2, 42:3, 42:14, 43:24, 46:10, 47:8, 58:18
**perjurous** [1] - 20:20
**perjury** [1] - 10:14
**permit** [1] - 58:19
**permitted** [2] - 4:6, 60:11
**person** [18] - 4:11, 4:15, 9:1, 13:15, 22:6, 43:20, 53:1, 53:2, 53:7, 53:8, 53:25, 54:1, 54:7, 54:14, 55:10, 56:3, 60:5
**person's** [2] - 53:19, 54:15
**personal** [1] - 54:23
**personnel** [1] - 64:2
**perspective** [1] - 69:13
**persuasion** [2] - 53:22, 53:23
**persuasive** [1] - 30:20
**phone** [11] - 22:24, 23:16, 27:16, 27:18, 37:4, 40:20, 41:4, 41:25, 42:1, 43:14, 43:22
**photo** [3] - 16:22, 35:20
**photos** [5] - 33:22, 33:23, 33:25, 63:11, 63:14
**phrase** [1] - 23:15
**physical** [1] - 18:22
**picking** [2] - 40:20, 41:25
**picture** [20] - 8:16, 15:25, 16:1, 16:5, 16:19, 16:20, 17:3, 17:22, 34:4, 45:6, 45:7, 45:10, 45:18, 45:20, 45:21, 46:6, 46:7, 46:11, 46:13, 46:14
**pictures** [9] - 15:13, 16:11, 45:5, 45:11, 46:11, 46:12, 46:23, 46:24, 47:1
**piecing** [2] - 34:8, 34:10
**pitch** [2] - 13:4, 13:13
**pitch-black** [1] - 13:4
**place** [5] - 10:9, 15:24, 15:25, 47:2, 65:4
**placed** [5] - 12:11, 28:10, 32:16, 58:8, 60:7
**places** [1] - 30:4
**Plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:12
**plan** [4] - 13:24, 32:15, 50:20, 54:9
**planted** [1] - 18:7
**plate** [9] - 35:21, 36:3, 36:4, 48:19, 48:20, 48:23, 48:24, 48:25, 55:14
**play** [11] - 18:23, 19:1, 19:4, 22:20, 25:10, 26:25, 27:9, 28:11, 28:23, 48:5
**played** [11] - 23:4, 24:8, 25:12, 25:18, 25:22, 26:16, 27:7, 27:14, 28:20, 30:25, 35:11
**playing** [3] - 19:10, 25:9, 29:14
**pleadings** [1] - 33:12
**please** [7] - 8:8, 21:5, 25:17, 30:6, 31:7, 58:3
**plenty** [4] - 41:19, 41:20, 50:7, 50:8
**plug** [2] - 57:5, 57:13
**point** [12] - 4:12, 7:5, 9:23, 14:2, 21:7, 24:7, 32:14, 33:21, 46:21, 47:6, 55:22, 56:24
**pointed** [3] - 31:23, 34:7, 51:21
**pointing** [1] - 14:9
**points** [7] - 3:5, 3:7, 3:23, 3:24, 4:3, 41:2, 41:10
**police** [8] - 18:14, 40:5, 40:15, 40:24, 43:14, 47:11, 56:15
**Police** [6] - 38:22, 39:6, 39:9, 39:13, 39:21, 42:7
**portion** [6] - 26:18, 26:22, 28:13, 29:7, 29:8, 29:9
**portions** [1] - 26:19
**pose** [2] - 33:12, 54:10
**posed** [1] - 54:15
**position** [17] - 3:9, 3:25, 8:7, 18:23, 20:15, 36:14, 60:9, 60:15, 60:17, 61:24, 62:8, 64:10, 64:20, 64:24, 65:13, 67:1, 67:2
**possession** [5] - 55:15, 55:23, 56:6, 58:2, 59:9
**possible** [2] - 42:1, 63:8
**possibly** [2] - 33:3, 68:3
**post** [2] - 24:1, 24:2
**post-captured** [1] - 24:2
**potentially** [1] - 65:12
**pre** [1] - 51:14
**pre-hearing** [1] - 51:14
**preface** [1] - 37:16
**prefer** [1] - 27:9
**preference** [3] - 61:1, 61:17, 61:21
**preliminary** [2] - 3:5, 3:6
**prematurely** [1] - 8:3
**prepare** [1] - 68:18
**prepared** [4] - 31:25, 50:13, 68:13, 68:20
**preponderance** [2] - 33:14, 55:4
**presence** [1] - 61:23
**present** [15] - 11:6, 17:17, 19:16, 26:5, 26:12, 27:10, 27:11, 33:8, 36:19, 60:13, 61:18, 61:24, 65:7, 66:23
**Present** [1] - 1:19
**presentation** [6] - 21:11, 24:23, 27:11, 27:24, 27:25, 32:14
**presented** [12] - 15:10, 24:20, 24:25, 25:24, 52:16, 54:8, 54:19, 54:25, 55:2, 55:3, 55:12, 55:17
**presenting** [1] - 24:12
**press** [3] - 24:9, 25:19, 25:20
**presumably** [1] - 62:14
**presume** [1] - 62:3
**presumed** [4] - 17:14, 53:3, 53:4, 54:16
**presumption** [7] - 32:20, 33:8, 53:15, 53:21, 54:2, 54:3, 54:18
**pretrial** [6] - 20:23, 30:22, 32:16, 51:14, 58:20, 68:16
**pretty** [3] - 45:20, 45:21, 57:24
**previously** [1] - 31:23
**Prince** [8] - 38:21, 39:6, 39:7, 39:8, 39:12, 39:18, 39:21, 42:6
**principal** [2] - 4:8, 26:18
**principally** [1] - 11:20
**print** [6] - 58:17, 63:10, 63:17, 65:10, 65:21
**printing** [2] - 58:16, 65:3
**prior** [1] - 32:8
**PRO** [1] - 1:17
**pro** [4] - 2:11, 6:8, 6:16, 61:9
**probably** [1] - 19:17
**problem** [1] - 14:6
**procedural** [1] - 5:20
**procedure** [11] - 7:3, 60:10, 61:23, 61:25, 62:9, 64:25, 65:4, 65:6, 65:11, 67:2, 67:4
**proceed** [11] - 7:14, 19:8, 21:16, 22:18, 24:4, 28:6, 29:12, 31:10, 32:2, 66:22
**proceeding** [4] - 12:22, 13:5, 26:6, 69:20
**Proceedings** [1] - 1:25

**proceedings** [4] - 4:13, 18:1, 66:6, 70:10
**PROCEEDINGS** [1] - 1:8
**proceeds** [1] - 50:9
**process** [2] - 3:12, 5:23
**Produced** [1] - 1:25
**produced** [1] - 56:18
**production** [3] - 53:17, 53:21, 54:4
**professional** [2] - 40:17, 50:21
**proffer** [2] - 54:19, 54:20
**proffers** [2] - 20:18, 49:17
**prong** [1] - 33:18
**proper** [2] - 6:10, 17:10
**proposal** [1] - 60:14
**proposed** [2] - 54:9, 60:21
**prosecute** [1] - 7:8
**prosecution** [8] - 7:18, 9:19, 10:2, 10:17, 12:3, 14:14, 15:19, 17:8
**prosecutorial** [1] - 17:9
**protect** [2] - 8:17, 10:17
**protected** [3] - 7:17, 58:6, 58:8
**protection** [4] - 38:24, 39:6, 39:9, 42:7
**Protection** [1] - 39:14
**protocol** [1] - 7:3
**prove** [4] - 28:1, 49:22, 53:11, 53:23
**proved** [1] - 52:8
**proven** [9] - 17:14, 17:17, 45:2, 50:4, 52:7, 54:14, 55:4, 56:23, 57:15
**provide** [8] - 3:9, 19:22, 20:24, 26:23, 36:13, 61:14, 62:11, 64:16
**provided** [7] - 6:25, 32:3, 32:4, 51:8, 61:2, 61:8, 61:11
**proving** [2] - 17:6, 21:3
**psych** [1] - 10:19
**public** [2] - 42:4, 43:6
**Public** [1] - 1:22
**purchase** [1] - 36:6
**purpose** [2] - 29:14, 32:10
**purposes** [1] - 65:10
**pursuant** [2] - 31:18, 70:8
**put** [14] - 3:23, 4:7, 33:2, 40:18, 40:22, 42:10, 42:11, 42:16, 43:7, 49:11, 57:22, 58:14, 63:12
**puts** [1] - 43:10
**putting** [1] - 56:15

## Q

**qualms** [1] - 63:6
**question** [11] - 3:2, 22:6, 24:5, 27:2, 44:17, 44:18, 44:22, 60:4, 60:14, 62:2, 62:7
**questioned** [1] - 37:18
**questioning** [1] - 41:23
**questions** [9] - 37:2, 37:4, 37:12, 38:2, 40:13, 41:13, 43:2, 44:16, 44:19
**quick** [1] - 36:8
**quickly** [1] - 63:8
**quiet** [1] - 25:21
**quote** [7] - 4:11, 5:17, 5:21, 6:8, 6:17, 53:6

## R

**R** [2] - 1:11, 2:1
**racist** [1] - 42:20
**rack** [15] - 16:3, 16:4, 16:12, 16:14, 16:16, 16:24, 17:22, 17:23, 33:25, 34:5, 45:4, 45:8, 45:11, 45:13
**raise** [2] - 7:6, 25:8
**rather** [2] - 64:3, 64:5
**reached** [2] - 28:25, 44:13
**read** [6] - 30:6, 30:14, 31:3, 39:24, 47:11, 48:24
**reader** [2] - 36:4, 55:14
**ready** [2] - 15:1, 15:2
**realize** [3] - 9:7, 9:13, 12:3
**really** [1] - 32:22
**Realtime** [1] - 70:6
**reason** [8] - 18:9, 20:14, 20:22, 26:2, 37:5, 40:3, 40:17, 50:5
**reasonably** [7] - 53:7, 53:19, 53:24, 54:6, 55:6, 55:9, 56:2
**reasoning** [1] - 52:20
**reasons** [1] - 55:25
**reassignment** [1] - 10:12
**rebut** [2] - 32:19, 33:8
**rebuttal** [1] - 22:16
**receive** [2] - 41:17, 67:2
**received** [1] - 41:15
**recent** [1] - 20:22
**recently** [1] - 61:18
**recognized** [1] - 5:6
**recommend** [1] - 9:5
**recommendation** [1] - 3:13
**record** [38] - 2:10, 2:25, 3:23, 6:14, 7:4, 7:16, 8:3, 8:9, 11:2, 11:6, 11:19, 14:4, 14:5, 16:8, 17:15, 18:23, 19:2, 21:6, 21:9, 22:21, 23:11, 29:14, 31:25, 32:3, 32:7, 33:1, 33:2, 33:11, 39:11, 39:12, 40:6, 40:18, 42:4, 43:6, 49:19, 49:21, 49:22, 56:5
**recorded** [5] - 20:9, 20:12, 23:25, 27:18, 28:19
**Recorded** [1] - 1:25
**recording** [9] - 22:23, 23:13, 24:14, 24:24, 25:2, 25:3, 25:5, 25:8
**recordings** [2] - 20:2, 20:24
**redone** [1] - 24:21
**Reese** [3] - 20:10, 22:25, 23:1
**refer** [2] - 18:22, 20:20
**referenced** [2] - 20:1, 29:20
**references** [2] - 17:13, 22:9
**referred** [4] - 4:21, 11:3, 19:5, 53:15
**referring** [2] - 11:7, 16:19
**reflects** [1] - 23:21
**Reform** [5] - 30:21, 52:18, 52:21, 52:22, 54:17
**refusal** [1] - 66:25
**refusing** [1] - 66:22
**regard** [9] - 14:22, 30:20, 30:22, 53:18, 55:11, 55:18, 62:9, 65:5, 67:4
**regarding** [1] - 25:8
**Registered** [1] - 70:5
**regulations** [1] - 70:11
**release** [4] - 32:16, 33:4, 54:9, 54:16
**released** [2] - 33:13, 33:16
**relevance** [5] - 21:3, 21:25, 22:2, 22:17, 30:3
**relevant** [6] - 5:20, 9:6, 22:3, 28:13, 30:21, 32:23
**relied** [1] - 53:14
**relief** [1] - 65:7
**rely** [2] - 49:16, 49:18
**relying** [1] - 21:23
**remain** [1] - 62:3
**remains** [1] - 53:23
**remember** [2] - 48:8, 48:9
**remind** [1] - 29:13
**remove** [2] - 12:20, 63:2
**removed** [1] - 63:20
**removing** [1] - 69:1
**rendered** [1] - 6:18
**reply** [3] - 7:7, 35:14, 65:14
**report** [5] - 38:9, 42:18, 42:19, 46:1, 47:11
**reported** [1] - 70:9
**REPORTER** [2] - 70:1, 70:17
**Reporter** [2] - 70:5, 70:6
**reporting** [1] - 28:10
**represent** [7] - 4:11, 4:24, 5:13, 9:3, 65:25, 66:13, 68:14
**representation** [11] - 4:2, 4:6, 4:16, 5:2, 5:6, 5:9, 5:15, 5:18, 5:25, 6:10, 6:12
**represented** [1] - 7:21
**representing** [8] - 5:4, 7:23, 8:5, 8:11, 9:8, 13:11, 60:6, 68:14
**request** [6] - 11:3, 13:17, 63:1, 67:10, 67:14, 67:18
**requested** [5] - 11:4, 53:12, 63:1, 65:21, 67:1
**requests** [4] - 5:13, 65:5, 65:9, 67:3
**require** [1] - 61:23
**required** [6] - 53:7, 53:20, 53:25, 54:7, 55:6, 56:2
**rescind** [1] - 8:2
**respect** [2] - 7:11, 10:6
**respond** [9] - 18:25, 19:6, 21:10, 27:24, 30:19, 31:6, 31:12, 62:21, 64:10
**response** [4] - 11:9, 20:22, 26:11, 27:11
**responsibility** [1] - 59:23
**restate** [1] - 6:3
**result** [1] - 5:7
**resuming** [1] - 30:23
**returned** [1] - 17:11
**review** [26] - 33:25, 51:6, 52:17, 52:19, 56:19, 56:20, 60:12, 60:18, 60:24, 61:3, 61:10, 61:15, 62:4, 62:14, 62:16, 62:25, 63:3, 63:7, 64:5, 64:6, 65:2, 65:4, 66:21, 66:22, 66:25, 68:21
**reviewed** [6] - 2:25, 16:10, 18:20, 55:1, 61:19, 69:5
**reviewing** [1] - 64:12
**revoke** [2] - 6:11, 6:16
**revoked** [1] - 59:14
**right** [106] - 2:12, 2:16, 4:1, 4:2, 4:5, 4:10, 4:16, 4:23, 5:2, 5:5, 5:18, 5:25, 6:10, 6:11, 6:25, 7:1, 7:8, 7:9, 7:13, 7:20, 7:23, 8:3, 8:5, 8:15, 8:16, 8:18, 8:25, 9:12, 10:2, 10:9, 10:12, 10:13, 10:16, 10:20, 11:9, 11:12, 11:15, 11:23, 12:3, 12:7, 12:13, 12:23, 13:1, 13:3, 13:8, 13:12, 13:15, 14:2, 14:10, 15:6, 15:13, 17:5, 18:19, 23:18, 26:8, 26:18, 28:2, 30:8, 36:17, 36:18, 36:22, 37:4, 37:14, 37:22, 38:1, 38:3, 38:10, 38:19, 39:25, 40:5, 41:21, 42:11, 44:1, 44:3, 44:14, 44:24, 47:7, 47:12, 47:13,

47:16, 47:20, 49:9, 49:10, 49:11, 51:3, 51:10, 51:11, 52:12, 56:4, 56:12, 56:14, 57:3, 57:25, 58:10, 59:23, 62:18, 62:20, 66:5, 66:14, 67:12, 67:15, 68:5, 69:7
**rights** [5] - 7:17, 7:20, 8:18, 10:10, 12:18
**risk** [14] - 17:6, 17:25, 18:16, 18:17, 21:3, 28:1, 28:5, 33:15, 49:23, 50:6, 51:24, 52:24, 55:18, 55:23
**RMR** [1] - 70:17
**road** [1] - 34:2
**roads** [1] - 34:2
**roof** [16] - 16:3, 16:4, 16:12, 16:14, 16:16, 16:24, 17:22, 17:23, 33:25, 34:5, 45:4, 45:8, 45:11, 45:13, 45:15
**room** [4] - 12:19, 13:14, 63:6, 66:24
**rooms** [1] - 60:25
**routine** [1] - 38:11
**rule** [7] - 13:10, 15:13, 21:23, 50:13, 67:3
**rules** [4] - 5:20, 7:2, 15:12, 15:15
**run** [8] - 18:10, 18:14, 18:15, 43:20, 50:3, 50:7, 50:8, 50:9
**running** [2] - 48:21, 50:22

## S

**S** [4] - 1:11, 1:15, 2:1, 70:16
**sac** [2] - 47:3, 47:18
**safe** [2] - 57:1, 58:4
**safely** [1] - 57:18
**safety** [8] - 33:10, 37:10, 53:8, 53:20, 53:25, 54:7, 55:9, 56:3
**said** [54] - 3:7, 9:3, 9:4, 9:6, 11:18, 14:10, 30:6, 30:14, 30:15, 30:16, 31:4, 31:7, 34:6, 35:6, 35:9, 37:12, 37:20, 38:4, 38:11, 38:21, 39:5, 39:7, 39:8, 39:12, 39:13, 39:14, 39:15, 39:18, 40:2, 41:10, 41:23, 44:19, 45:1, 49:7, 49:24, 51:12, 51:17, 51:21, 51:22, 51:23, 51:25, 52:17, 54:3, 55:12, 59:4, 59:12, 59:13, 59:15, 63:14, 66:17
**same** [10] - 5:24, 8:25, 9:1, 32:25, 34:6, 34:16, 35:6, 36:1, 57:8, 66:24
**sat** [1] - 9:19
**satisfied** [2] - 4:19, 4:20
**saw** [2] - 9:22, 45:23
**schedule** [3] - 60:9, 60:19, 60:22
**school** [1] - 34:13
**screen** [3] - 39:11, 39:12, 51:14
**screenshots** [1] - 63:17
**SD** [1] - 57:7
**SE** [1] - 1:17
**se** [4] - 2:11, 6:8, 6:16, 61:9
**Sean** [1] - 29:18
**search** [4] - 15:15, 15:16, 15:21, 18:5
**searches** [1] - 55:16
**Second** [2] - 56:12, 56:13
**second** [5] - 4:21, 17:12, 24:9, 25:19, 61:2
**seconds** [2] - 28:22, 31:2
**secure** [1] - 60:7
**security** [1] - 44:11
**Sedira** [4] - 1:21, 2:14, 7:22, 9:11
**seeing** [2] - 12:8, 12:9
**seek** [1] - 17:11
**seeking** [1] - 31:18
**seeks** [2] - 53:1, 53:10
**seem** [1] - 41:13
**seen** [3] - 9:24, 12:9, 34:2
**seizure** [2] - 15:15, 15:16
**self** [11] - 4:2, 4:6, 4:16, 5:2, 5:6, 5:9, 5:15, 5:18, 5:25, 6:10, 6:12
**self-representation** [9] - 4:2, 4:6, 5:2, 5:6, 5:9, 5:15, 5:25, 6:10, 6:12
**send** [1] - 12:7
**sense** [3] - 17:21, 27:6, 50:11
**sent** [6] - 9:12, 9:20, 9:25, 10:14, 11:10, 12:1
**September** [4] - 20:13, 27:19, 27:22, 28:14
**serious** [2] - 5:10, 12:23
**seriousness** [2] - 12:24, 54:13
**set** [1] - 68:5
**setting** [1] - 16:21
**seven** [1] - 47:5
**severe** [1] - 4:12
**severity** [1] - 7:12
**share** [4] - 3:6, 12:2, 18:21
**sharing** [1] - 69:7
**she's** [12] - 10:5, 17:17, 26:2, 35:7, 40:12, 46:2, 46:5, 46:21, 48:4, 48:7, 49:2, 51:20
**Sheriff's** [2] - 20:10, 22:25
**shift** [1] - 53:22
**shifts** [2] - 53:21, 54:4
**shoes** [1] - 40:22
**shoot** [5] - 39:24, 40:16, 40:18, 40:25, 43:18
**shortly** [1] - 2:20
**should** [7] - 15:22, 20:16, 28:23, 29:10, 30:19, 36:15, 69:14
**shouldn't** [2] - 14:10, 40:19
**show** [14] - 16:5, 16:15, 17:25, 22:12, 35:11, 51:6, 52:10, 57:21, 57:23, 58:11, 59:16, 60:3, 63:18, 68:13
**showed** [14] - 15:11, 15:13, 15:20, 17:3, 18:2, 36:23, 39:11, 39:16, 49:14, 52:5, 63:22, 63:23
**showing** [4] - 53:10, 57:16, 59:20, 69:9
**shown** [8] - 22:13, 55:7, 55:25, 56:25, 57:14, 57:21, 58:4, 58:6
**shows** [2] - 10:16, 15:25
**shut** [1] - 50:22
**sides** [1] - 14:20
**sidewalk** [2] - 45:13, 45:16
**sight** [5] - 39:25, 40:16, 40:18, 40:25, 43:18
**sign** [2] - 13:16, 38:19
**signed** [2] - 10:21, 15:18
**significant** [1] - 55:18
**silver** [2] - 35:11, 35:20
**similar** [6] - 16:5, 16:6, 16:17, 17:4, 45:10, 45:23
**simply** [3] - 7:15, 7:16, 54:3
**since** [1] - 35:18
**single** [3] - 57:5, 57:13, 58:7
**sir** [2] - 9:17, 15:2
**sister** [2] - 44:6, 44:8
**sit** [4] - 13:9, 43:25, 44:16, 51:16
**sitting** [2] - 42:17, 44:17
**six** [3] - 41:17, 48:1, 67:22
**Sixth** [2] - 4:1, 6:25
**skips** [1] - 37:1
**slowly** [1] - 34:17
**smashed** [1] - 18:9
**society** [2] - 16:7, 18:18
**software** [3] - 50:21, 51:1, 62:12
**some** [19] - 7:9, 22:21, 29:25, 34:2, 36:9, 37:25, 40:5, 42:9, 46:6, 46:13, 48:21, 48:23, 54:5, 60:5, 61:9, 61:12, 63:12, 66:1
**somebody** [6] - 23:8, 23:24, 32:19, 37:8, 41:23, 43:12
**somebody's** [1] - 43:3
**someone** [4] - 14:9, 27:5, 48:13, 67:13
**something** [12] - 10:15, 14:9, 14:12, 19:16, 30:11, 36:19, 36:20, 40:21, 43:5, 45:14, 57:4, 64:8
**sometime** [1] - 67:20
**sometimes** [1] - 10:7
**soon** [1] - 42:1
**sooner** [1] - 63:4
**sorry** [1] - 25:13
**sort** [1] - 62:15
**south** [2] - 22:15, 38:7
**southeastern** [1] - 38:7
**space** [1] - 11:4
**speak** [14] - 8:17, 8:21, 8:22, 9:14, 10:6, 13:21, 14:7, 19:15, 25:23, 26:8, 27:20, 30:18, 59:22
**speaking** [4] - 12:14, 14:6, 28:16, 37:5
**speaks** [1] - 14:4
**Special** [3] - 2:5, 20:12, 27:18
**specific** [2] - 7:5, 65:5
**specifically** [2] - 65:16, 65:18
**speed** [6] - 47:24, 47:25, 48:3, 48:6, 48:7
**spoke** [4] - 42:19, 43:1, 59:18, 59:19
**spoken** [6] - 8:19, 8:20, 13:19, 13:22, 15:22, 38:1
**spot** [2] - 34:14, 35:8
**standard** [5] - 4:18, 4:20, 6:14, 50:15, 52:21
**standards** [1] - 59:10
**Standby** [1] - 1:20
**standby** [36] - 2:12, 2:14, 5:12, 11:3, 14:16, 56:18, 56:21, 56:23, 59:2, 59:3, 59:6, 59:8, 60:6, 60:13, 60:15, 60:16, 60:21, 60:25, 61:18, 61:19, 61:24, 62:8, 63:2, 63:20, 63:21, 64:14, 64:15, 65:9, 65:16, 66:14, 66:24, 67:8, 68:1, 68:20, 69:2
**standing** [1] - 46:22
**stands** [1] - 47:9
**start** [6] - 19:9, 19:11, 25:16, 52:20, 65:16, 65:18
**starts** [4] - 23:9, 23:15, 37:12, 41:12
**state** [23] - 5:10, 7:15, 8:4, 18:1, 32:12, 38:14, 38:17, 38:20, 38:25, 40:13, 40:24, 41:16, 41:19, 43:5, 43:24, 59:1, 62:21, 64:2, 65:17, 65:19, 66:5, 66:20
**stated** [8] - 21:19, 29:22, 41:4, 41:14, 45:4, 56:5, 66:3, 66:15
**statement** [3] - 37:19,

37:20, 65:20
**statements** [7] - 20:18, 20:20, 20:21, 29:15, 29:20, 30:3, 35:24
**States** [6] - 2:4, 5:16, 6:6, 6:20, 70:6, 70:12
**STATES** [4] - 1:1, 1:3, 1:9, 1:14
**states** [3] - 5:7, 22:5, 36:19
**stating** [5] - 15:25, 38:24, 49:8, 66:4, 66:18
**station** [2] - 36:1, 36:6
**status** [4] - 6:16, 32:9, 32:17, 68:8
**STATUS** [1] - 1:8
**statute** [1] - 52:24
**stay** [3] - 50:11, 51:12, 64:5
**staying** [3] - 57:5, 63:5, 63:7
**stealing** [1] - 48:19
**stenographically** [1] - 70:9
**stenographically-reported** [1] - 70:9
**Stenography** [1] - 1:25
**sticking** [1] - 45:14
**still** [5] - 15:12, 18:10, 24:24, 33:22, 33:25
**stills** [2] - 55:13, 63:14
**stole** [1] - 48:13
**stolen** [4] - 48:23, 48:24, 48:25, 49:1
**stood** [1] - 47:22
**stop** [3] - 15:3, 27:15, 49:13
**stopping** [1] - 31:1
**storage** [1] - 57:7
**straight** [1] - 48:4
**Street** [2] - 1:15, 34:11
**street** [8] - 46:2, 46:17, 46:25, 47:2, 47:3, 47:12, 47:17, 47:23
**strength** [4] - 29:17, 29:19, 32:1, 33:20
**strike** [2] - 51:20, 51:22
**stuff** [2] - 38:11, 64:4
**submission** [2] - 29:24, 55:14
**submissions** [2] - 55:2, 55:3
**submitted** [2] - 10:4, 65:19
**subsequently** [1] - 35:18
**substantive** [1] - 5:20
**successful** [1] - 43:19
**such** [2] - 5:7, 53:12
**sudden** [1] - 13:20
**suffers** [1] - 4:11
**suing** [1] - 38:20
**Sunday** [1] - 35:22
**supervised** [2] - 32:16, 33:4
**supervision** [1] - 53:18
**support** [4] - 20:15, 50:24, 53:12, 61:25
**supporting** [1] - 54:21
**supposed** [1] - 10:8
**suppress** [1] - 7:19
**Supreme** [5] - 4:7, 4:9, 5:1, 5:2, 6:22
**sure** [10] - 3:23, 4:3, 4:22, 7:17, 11:2, 11:6, 16:10, 17:23, 18:24, 19:21
**surrounding** [1] - 20:19
**surveillance** [5] - 34:8, 35:10, 35:25, 55:13
**suspect** [3] - 34:11, 34:13, 34:16
**suspect's** [1] - 35:20
**SUV** [6] - 34:11, 34:17, 35:11, 35:20, 48:15, 48:22
**system** [1] - 5:22
**Szekely** [3] - 1:21, 2:14, 7:21
**SZEKELY** [3] - 2:13, 62:10, 68:2

## T

**tactic** [1] - 5:21
**take** [9] - 3:25, 43:25, 47:16, 58:3, 58:23, 62:16, 63:11, 63:13, 63:17
**taken** [5] - 13:3, 20:21, 56:19, 56:24, 63:2
**takes** [4] - 10:9, 40:25, 44:20, 54:9
**taking** [1] - 7:19
**talk** [12] - 9:6, 13:23, 37:11, 38:3, 38:13, 40:4, 41:4, 41:14, 43:19, 43:23, 58:9
**talked** [3] - 4:14, 37:14, 56:17
**talking** [14] - 8:14, 12:15, 27:6, 35:7, 35:19, 38:17, 41:12, 42:8, 43:2, 43:8, 43:15, 44:12, 46:2, 46:5
**talks** [2] - 38:13, 59:20
**tax** [2] - 41:16, 41:18
**taxes** [3] - 41:19, 41:20
**team** [1] - 17:9
**technical** [1] - 62:10
**tell** [5] - 24:15, 24:17, 50:9, 51:16, 63:13
**telling** [4] - 10:10, 12:1, 38:25, 39:16
**tells** [1] - 47:9
**ten** [5] - 27:16, 29:10, 38:1, 48:2, 51:21
**terminate** [1] - 5:8
**termination** [1] - 5:14
**terrorist** [1] - 39:5
**testify** [4] - 63:21, 67:9, 67:13, 67:16
**thank** [12] - 18:19, 22:19, 26:15, 27:13, 28:8, 29:13, 31:15, 36:16, 50:12, 64:19, 68:4, 69:16
**that's** [50] - 5:1, 5:15, 8:6, 10:10, 10:12, 14:12, 15:10, 15:17, 17:14, 19:17, 22:12, 22:13, 27:1, 32:20, 34:5, 34:20, 34:24, 35:9, 36:8, 37:10, 41:3, 43:24, 44:14, 45:1, 45:24, 46:4, 46:8, 46:10, 47:6, 47:10, 48:17, 48:18, 48:19, 48:22, 51:4, 51:13, 51:19, 53:8, 53:13, 54:14, 56:6, 56:23, 59:12, 59:16, 60:1, 61:13, 64:4, 64:17, 65:2, 67:22
**them** [46] - 8:5, 8:24, 8:25, 11:11, 11:24, 12:1, 12:20, 13:7, 13:9, 14:17, 18:2, 18:9, 18:15, 18:25, 19:1, 34:16, 37:10, 44:7, 51:3, 57:2, 57:10, 58:3, 58:24, 59:15, 65:10, 65:16, 65:18, 65:20, 65:22, 66:1, 66:4, 66:5, 66:9, 66:11, 66:15, 66:19, 67:16, 68:8, 68:15, 68:17
**themselves** [6] - 4:11, 4:13, 4:24, 5:4, 60:6, 60:13
**then** [29] - 7:24, 8:1, 8:18, 9:10, 10:25, 11:20, 12:16, 13:2, 13:12, 15:20, 27:16, 28:12, 30:14, 40:10, 41:12, 41:17, 41:22, 44:20, 45:9, 45:22, 46:9, 47:9, 48:20, 48:22, 50:9, 50:16, 62:14, 66:20, 67:2
**there's** [37] - 4:22, 9:15, 13:2, 15:11, 16:13, 16:20, 16:22, 16:23, 16:25, 17:22, 22:4, 22:5, 26:23, 29:8, 33:6, 33:7, 34:1, 36:4, 36:12, 44:23, 44:24, 45:6, 45:16, 45:18, 45:19, 46:11, 46:17, 48:6, 48:7, 48:18, 50:5, 56:14, 58:7, 61:22, 64:2
**thereby** [1] - 5:8
**therefore** [1] - 55:25
**they'll** [2] - 57:21, 57:22
**they're** [7] - 27:6, 58:1, 59:17, 59:20, 60:2, 62:22, 64:16
**thick** [4] - 16:24, 17:23, 45:14
**thing** [6] - 10:10, 15:10, 34:6, 35:6, 44:3, 44:15
**things** [10] - 12:14, 32:18, 38:6, 40:6, 40:14, 49:13, 51:21, 59:24, 63:14, 65:21
**think** [24] - 9:23, 13:14, 13:15, 28:23, 29:3, 30:20, 32:3, 32:6, 34:25, 36:18, 37:24, 40:19, 44:1, 48:8, 60:20, 61:5, 62:25, 67:17, 68:3, 68:12, 68:19, 69:14
**third** [4] - 9:3, 9:4, 17:13, 44:22
**thoroughly** [1] - 9:15
**thought** [2] - 11:20, 38:2
**thoughts** [1] - 49:4
**thousands** [3] - 38:8, 38:9, 44:23
**threaten** [1] - 17:10
**threatened** [1] - 9:2
**threatening** [1] - 37:8
**three** [11] - 13:19, 14:20, 16:6, 17:17, 37:22, 42:24, 44:1, 47:21, 57:10, 63:23, 67:18
**through** [9] - 13:4, 32:1, 34:10, 38:6, 46:3, 46:17, 48:14, 52:7, 55:2
**throughout** [3] - 38:7, 58:14
**throw** [1] - 32:24
**thrown** [1] - 18:6
**Thursday** [3] - 68:3, 68:6, 68:25
**thus** [2] - 60:11, 65:11
**ties** [2] - 33:6
**time** [22] - 3:16, 9:3, 9:4, 9:14, 12:6, 14:5, 22:21, 27:20, 29:23, 30:17, 31:13, 32:25, 33:2, 38:21, 47:4, 47:16, 47:17, 50:8, 52:5, 65:15
**times** [12] - 6:2, 6:4, 11:10, 11:11, 11:19, 11:24, 23:19, 35:15, 37:2, 41:4, 60:23, 67:18
**timing** [1] - 34:15
**today** [14] - 2:17, 4:15, 6:13, 11:17, 18:23, 19:1, 29:15, 32:1, 49:11, 49:18, 52:16, 55:3, 56:16, 69:15
**together** [3] - 34:8, 34:10, 61:19
**told** [19] - 5:3, 9:2, 9:11, 9:19, 11:10, 11:11, 11:24, 13:6, 13:11, 21:21, 35:15, 37:13, 38:3, 47:22, 49:25, 59:15, 63:5, 66:9
**ton** [1] - 22:5
**too** [1] - 43:18
**took** [9] - 15:24, 38:23, 40:7, 40:8, 40:10, 40:16, 43:14, 47:1, 49:8
**top** [7] - 16:23, 16:24, 16:25, 45:12, 45:19, 45:21
**topic** [2] - 56:16, 61:8
**touch** [1] - 63:13
**towards** [2] - 35:23, 44:13
**tracing** [1] - 34:8
**track** [1] - 33:1
**tracking** [1] - 35:19

**TRANSCRIPT** [1] - 1:8
**transcript** [4] - 32:4, 52:13, 70:9, 70:11
**Transcript** [1] - 1:25
**Transcription** [1] - 1:25
**transcripts** [3] - 32:8, 32:9, 32:10
**transponder** [3] - 48:16, 49:1
**transportation** [1] - 60:22
**transported** [1] - 63:25
**traveling** [1] - 34:2
**trial** [16] - 4:13, 5:8, 5:23, 6:2, 6:4, 6:19, 7:14, 7:15, 12:21, 33:24, 53:2, 54:11, 57:20, 57:25, 68:24
**trials** [1] - 5:5
**tried** [9] - 17:17, 18:3, 41:5, 42:3, 42:13, 42:21, 43:6, 43:13, 43:18
**tries** [1] - 44:16
**trip** [1] - 39:19
**truck** [1] - 48:9
**true** [12] - 8:16, 22:12, 30:15, 37:18, 39:16, 47:6, 52:10, 56:7, 60:1, 60:2, 63:18, 70:9
**truth** [4] - 8:17, 49:2, 49:13, 49:25
**truthful** [1] - 29:21
**try** [6] - 13:3, 15:24, 17:18, 18:16, 49:10, 49:11
**trying** [14] - 7:14, 8:17, 12:17, 12:20, 14:1, 32:19, 37:9, 37:16, 40:3, 41:24, 43:4, 43:20, 57:25
**turn** [8] - 3:21, 7:4, 8:19, 8:21, 8:22, 19:14, 34:22, 35:3
**turned** [1] - 20:3
**TURNER** [2] - 1:5, 1:18
**Turner** [90] - 2:4, 2:9, 2:10, 2:11, 2:17, 2:18, 3:4, 3:25, 4:3, 4:25, 6:15, 7:6, 10:24, 16:9, 18:19, 18:24, 19:14, 19:20, 19:23, 20:3, 20:13, 20:16, 20:18, 21:4, 21:24, 22:14, 22:16, 23:1, 23:2, 23:21, 24:16, 24:19, 24:22, 25:6, 25:7, 25:14, 25:23, 26:4, 26:10, 26:22, 27:18, 28:9, 29:9, 29:15, 29:17, 29:21, 30:4, 30:17, 31:5, 31:9, 31:17, 31:19, 32:21, 33:22, 34:4, 34:22, 34:23, 35:2, 35:6, 35:13, 35:16, 36:9, 36:17, 39:13, 49:16, 50:12, 52:12, 52:15, 53:3, 54:8, 55:6, 55:20, 56:2, 56:17, 58:20, 60:12, 60:18, 60:24, 61:15, 62:4, 62:6, 62:19, 62:22, 64:11, 64:25, 65:23, 68:11, 69:6, 69:12, 69:17
**Turner's** [6] - 20:7, 20:25, 30:1, 32:11, 35:21, 60:22
**TV** [1] - 57:7
**twice** [1] - 67:17
**two** [33] - 9:15, 10:18, 15:20, 15:24, 16:6, 17:15, 17:19, 17:25, 18:5, 18:17, 18:22, 19:10, 22:9, 29:14, 35:9, 37:19, 38:13, 38:15, 41:15, 42:23, 44:6, 45:5, 46:20, 46:23, 46:24, 48:18, 50:20, 52:23, 57:10, 61:1, 63:20
**typically** [1] - 32:18

## U

**U.S** [7] - 4:9, 6:23, 13:13, 52:22, 53:9, 62:2, 64:13
**U.S.A** [1] - 38:7
**U.S.C** [3] - 31:18, 36:18, 70:8
**ultimately** [1] - 61:10
**under** [8] - 30:21, 52:18, 52:21, 52:24, 53:16, 59:10
**understand** [19] - 7:7, 7:12, 8:7, 8:10, 10:7, 12:24, 12:25, 15:2, 23:18, 26:18, 41:2, 41:7, 49:3, 52:11, 61:21, 63:21, 64:1
**understanding** [1] - 60:23
**understood** [4] - 11:13, 22:1, 36:16, 52:2
**unfamiliar** [1] - 23:22
**Unit** [1] - 3:8
**United** [6] - 2:4, 5:16, 6:6, 6:20, 70:6, 70:12
**UNITED** [4] - 1:1, 1:3, 1:9, 1:14
**unless** [1] - 14:7
**unreasonable** [1] - 66:24
**unreasonably** [1] - 66:22
**until** [13] - 9:7, 9:14, 9:21, 11:1, 17:14, 17:16, 26:6, 35:3, 39:3, 47:5, 47:15, 48:24, 50:4
**untruthful** [1] - 10:3
**up** [25] - 10:3, 11:20, 17:25, 18:2, 30:2, 36:24, 39:23, 40:20, 41:25, 43:5, 43:25, 44:10, 45:14, 46:22, 47:9, 51:6, 51:16, 52:5, 52:6, 52:10, 59:2, 62:1, 68:13
**update** [2] - 3:9, 37:5
**upheld** [2] - 6:15, 36:15
**uphold** [1] - 31:16
**upset** [1] - 9:13
**us** [2] - 68:3, 68:4
**use** [4] - 5:4, 11:4, 59:9, 65:11
**used** [6] - 5:21, 22:7, 23:15, 56:6, 56:8, 56:13
**uses** [1] - 32:25
**usually** [1] - 45:2
**utmost** [1] - 7:11

## V

**v** [9] - 1:4, 2:4, 4:7, 4:25, 5:16, 6:7, 6:20, 6:23, 39:13
**vacate** [1] - 12:10
**valid** [2] - 8:16, 14:8
**validated** [1] - 22:13
**vehicle** [5] - 34:2, 34:13, 35:21, 36:3, 36:5
**vehicles** [2] - 34:18, 34:21
**very** [15] - 6:13, 9:14, 11:6, 16:21, 16:24, 17:23, 26:9, 29:1, 29:2, 32:3, 35:21, 36:8, 39:4, 45:8, 45:13
**vicinity** [1] - 15:24
**video** [35] - 18:15, 23:4, 23:9, 23:19, 24:8, 24:24, 25:12, 25:18, 25:22, 26:16, 27:7, 27:14, 28:20, 30:15, 30:25, 35:7, 35:10, 35:12, 37:1, 45:23, 45:24, 46:5, 46:6, 46:7, 46:10, 46:12, 47:1, 47:24, 48:5, 48:6, 48:9, 59:19, 63:15, 63:16
**videos** [13] - 33:23, 34:1, 34:9, 34:10, 34:15, 34:25, 35:1, 45:25, 48:10, 48:11, 55:13, 63:15
**view** [2] - 62:13, 62:15
**vigilante** [1] - 43:9
**violation** [3] - 15:17, 15:21, 17:19
**violence** [1] - 31:20
**violent** [3] - 17:12, 18:17, 39:20
**visitor's** [2] - 34:14, 35:8

## W

**wait** [10] - 9:17, 11:1, 11:14, 13:9, 14:19, 26:6, 35:2, 41:12, 50:16
**waiver** [1] - 4:5
**waiving** [2] - 3:25, 38:19
**walk** [1] - 31:25
**walking** [1] - 36:5
**want** [46] - 3:23, 4:3, 4:21, 6:13, 8:9, 11:2, 11:11, 11:24, 12:12, 12:21, 13:7, 13:11, 16:15, 19:11, 21:14, 22:6, 31:8, 37:3, 37:13, 40:4, 40:12, 41:3, 41:5, 41:13, 41:14, 41:24, 42:2, 42:15, 42:17, 42:20, 43:19, 43:21, 43:22, 43:23, 56:4, 57:22, 57:23, 58:2, 60:3, 63:19, 64:10, 65:24, 66:5, 66:7, 68:7
**wanted** [3] - 7:6, 20:24, 37:11
**wants** [1] - 8:15
**warrant** [1] - 16:23
**wasn't** [5] - 24:5, 40:8, 44:22, 44:25, 58:5
**watch** [2] - 18:14, 34:15
**watched** [12] - 34:20, 34:24, 34:25, 35:6, 45:24, 45:25, 46:10, 47:25, 48:2, 48:9, 48:11
**we'll** [3] - 2:19, 2:24, 47:16
**we've** [4] - 4:13, 11:19, 56:17, 69:6
**wearing** [2] - 36:1, 36:2
**week** [11] - 38:8, 38:9, 38:11, 44:21, 44:23, 44:24, 45:3, 60:23, 62:21, 64:11, 64:24
**weekend** [7] - 20:19, 21:1, 27:3, 29:22, 30:2, 35:25, 37:21
**weekly** [1] - 60:23
**weeks** [5] - 10:18, 37:22, 42:24, 44:1, 67:22
**weight** [1] - 54:21
**well-to-do** [1] - 44:9
**went** [5] - 17:10, 38:22, 44:6, 44:12
**what's** [2] - 41:11, 49:20
**whatever** [8] - 12:12, 13:16, 26:10, 57:13, 62:13, 66:4, 66:7, 66:16
**whenever** [1] - 21:14
**whereabouts** [3] - 20:19, 21:1, 27:2
**Whereupon** [11] - 23:4, 24:8, 25:12, 25:18, 25:22, 26:16, 27:7, 27:14, 28:20, 30:25, 69:20
**wherever** [1] - 19:11
**whether** [10] - 4:20, 9:5, 26:23, 53:18, 59:3, 59:19, 60:22, 61:14, 61:22, 68:19
**which** [37] - 4:8, 4:25, 8:18, 9:12, 12:12, 12:16, 14:8, 14:18, 15:21, 16:10, 16:12, 16:19, 18:11, 21:23, 23:1, 27:17, 29:18, 29:21, 33:9, 35:23, 36:11, 37:3, 37:14, 37:21, 38:5, 41:4, 41:16, 43:6, 44:25, 45:7, 45:13, 49:10, 50:22, 50:24, 51:5,

54:25, 57:16
**while** [7] - 9:8, 16:1, 25:23, 53:2, 54:11, 62:4, 62:22
**white** [13] - 45:13, 46:7, 46:10, 46:14, 46:15, 46:16, 46:20, 48:8, 48:14, 48:15, 48:22, 61:7
**whoever** [3] - 57:1, 60:3, 69:9
**why** [25] - 9:13, 10:12, 11:19, 19:23, 23:10, 23:11, 28:24, 29:10, 30:19, 30:20, 37:10, 40:3, 41:3, 41:14, 42:5, 42:6, 42:17, 42:20, 43:24, 44:5, 46:10, 46:14, 49:1, 49:10, 51:16
**wiggins** [1] - 6:23
**will** [65] - 3:1, 3:4, 3:13, 6:22, 7:4, 7:15, 18:20, 19:24, 21:10, 22:1, 22:23, 23:16, 25:6, 25:7, 26:4, 26:6, 26:10, 27:24, 30:12, 30:18, 31:10, 31:12, 31:13, 33:21, 34:16, 35:11, 35:16, 50:19, 50:21, 50:23, 51:1, 51:3, 51:4, 51:6, 51:8, 51:10, 52:19, 53:6, 53:24, 54:10, 55:5, 55:9, 56:21, 57:2, 58:8, 58:17, 59:17, 62:20, 63:16, 63:18, 63:19, 64:4, 65:1, 65:20, 67:2, 67:4, 68:17, 68:24, 69:1
**willfully** [1] - 37:1
**willing** [2] - 7:2, 58:23
**wire** [1] - 61:6
**wish** [9] - 19:9, 25:7, 26:5, 26:11, 27:8, 27:10, 33:18, 66:23, 69:13
**wished** [1] - 26:19
**wishes** [2] - 29:8, 36:12
**within** [5] - 14:18, 47:21, 48:2, 64:11, 64:24
**without** [17] - 6:19, 7:9, 9:9, 12:7, 12:8, 14:16, 23:12, 38:22, 40:25, 49:8, 57:1, 57:16, 59:7, 59:21, 60:13, 64:14, 64:15
**woman** [9] - 42:1, 42:10, 42:15, 43:7, 44:3, 48:14, 48:20, 51:15
**woman's** [1] - 37:25
**won't** [6] - 10:5, 13:10, 17:25, 44:10, 52:10, 57:14
**wondering** [1] - 42:17
**word** [2] - 32:24, 47:16
**words** [5] - 20:25, 32:25, 43:17, 43:25, 44:20
**work** [5] - 39:19, 57:2, 58:25, 60:21, 64:18
**worked** [1] - 51:1
**working** [7] - 40:17, 40:23, 44:9, 50:20, 51:3, 51:4, 59:17
**world** [1] - 18:13
**worn** [2] - 23:14, 28:19
**wouldn't** [2] - 9:14, 44:25
**writing** [1] - 65:17
**written** [2] - 14:23, 55:2
**wrote** [4] - 30:11, 31:3, 31:7, 37:19


## X


**Xbox** [1] - 57:6


## Y


**yeah** [4] - 14:5, 22:11, 44:10, 48:22
**year** [6] - 40:9, 40:11, 43:15, 45:25, 52:8, 58:5
**years** [3] - 38:1, 41:17, 42:23
**yes** [18] - 3:19, 7:7, 8:12, 15:19, 17:4, 20:6, 23:13, 24:11, 25:15, 28:15, 38:4, 38:11, 39:19, 42:15, 44:14, 46:8, 60:20, 64:23
**yet** [2] - 27:23, 34:22
**you'd** [6] - 14:21, 15:7, 18:21, 20:5, 49:4, 62:19
**you'll** [2] - 19:6, 31:5
**young** [1] - 41:8
**yourself** [5] - 2:10, 8:11, 40:22, 66:1, 66:13


## Z


**zone** [1] - 23:17
**ZPass** [5] - 48:12, 48:13, 48:16, 48:21


## §


**§** [3] - 53:9, 53:13, 70:8